**Deborah G. KEPHART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 555–93.**

Court of Criminal Appeals of Texas.

March 9, 1994.

Rehearing Denied May 11, 1994.

Ginny E. Campa, Austin, for appellant.

E. Bruce Curry, Dist. Atty., Susan L. Patterson, Asst. Dist. Atty., Kerrville, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

After a jury convicted Appellant of possession of less than twenty-eight grams of cocaine the trial court assessed her punishment at ten years, probated, and a $10,000 fine. The conviction was affirmed by the Court of Appeals. *Kephart v. State*, No. 04–92–298–CR (Tex.App.—San Antonio, delivered March 17, 1993). This Court granted Appellant's petition for discretionary review to determine whether a video tape admitted into evidence during the guilt/innocence phase of trial was properly authenticated. Tex. R.App.Pro. 200(c)(2) & (3).

The relevant facts surrounding Appellant's arrest are somewhat unusual. On October 13, 1991, one Manuel Conde and his girlfriend, Carol King, checked in to a Comfort Inn Motel in Fredericksburg, Texas. During routine check-in procedures, the clerk became alarmed at the appearance and demeanor of Conde and called the local authorities. The authorities determined that Conde

---

had an extensive record of drug-related arrests and subsequently set up surveillance of Conde's motel room. The following day, Conde and King were arrested and a consent to search form was obtained from them. During the search of their motel room, cocaine and drug paraphernalia were seized by police.[1] A video camera containing a tape was also discovered.

Later that day police, investigator Danny Flores and Gillespie County Sheriff Milton Jung viewed the video tape. Sheriff Jung recognized Appellant as one of the persons on the tape, along with her husband and 8-year old daughter. The tape purports to depict various scenes in Appellant's home, interrupted by pauses in the tape. On the tape, Appellant initially appears sober, then progressively under the influence of alcohol or narcotics, until she is seen on the tape at a table, engaged in conversation with Conde. On the table in the video is a white substance and a baggie with what appears to be marihuana, and their conversation is audible on the tape. The final scene on the tape is in Conde and King's room at the Comfort Inn, with Conde and King visibly and audibly arguing over who will snort "it."

After reviewing the tape, the Sheriff called Appellant in for questioning. In a written statement Appellant said that she and her husband Phillip, nicknamed "Admiral," along with Conde and King had been together the night of October 12, 1991, and that Conde and King had used some "white powder." She also stated that Conde, King and Admiral had smoked marihuana, and the next day, Conde and King left. Appellant denied using drugs on the night in question.

During the trial the State was allowed to introduce a copy of the video tape [2] and have the jury view it. Appellant objected that the tape was not properly authenticated as required by this Court's pertinent caselaw, and that it had been altered. She also asserted

that its probative value was greatly outweighed by the tape's prejudicial effect, citing Tex.R.Crim.Evid. 403.[3] After a hearing outside the presence of the jury the trial court overruled the objections. The tape was introduced during the testimony of Officer Flores who, during the showing, explained to the jury the various drugs and paraphernalia allegedly displayed, and observed that Appellant had sneezed and blown her nose. Appellant continued to object, pointing out that nothing on the video tape showed her using drugs.

On appeal Appellant complained the proper predicate had not been laid for introduction of the video tape. She argued that the State had failed to comply with the seven-pronged test for admissibility of audiotapes and video tapes. *Edwards v. State,* 551 S.W.2d 731 (Tex.Cr.App.1977); *Roy v. State,* 608 S.W.2d 645 (Tex.Cr.App.1980); *Huffman v. State,* 746 S.W.2d 212 (Tex.Cr.App.1988). The Court of Appeals rejected this contention because the tape in the instant case was not produced by law enforcement personnel so the usual predicate required by *Edwards* and its progeny was not applicable. In addition the tape was relevant because it showed circumstances which could reasonably indicate the presence of narcotics in Appellant's home. Therefore, the Court of Appeals concluded the trial court did not abuse its discretion by admitting the tape.

At the outset we are faced with the question of the continued viability of the *Edwards* test. In *Stapleton v. State,* 868 S.W.2d 781 (Tex.Cr.App.1993), we held that *Edwards* is no longer needed as an authoritative guide for the admissibility of electronic recordings because it has been superseded by the Rules of Criminal Evidence. *Id.* at 786. However, we also concluded that the germane rules have incorporated substantially the seven-pronged test of *Edwards. Ibid.* Although

---

1. The following items were found: a mirror with cocaine residue inside King's purse; a pipe with cocaine and marihuana residue; razor blades; a fingerscale; a baggie with white powder residue; a box of baking soda; a snuff can containing marihuana; and over $800 in small bills. This evidence was introduced during Appellant's trial.

2. According to Flores the original was of poor quality and had been "eaten" by a VCR. The prosecutor stated in a hearing outside the jury's presence that the tape had been "eaten" by co-defendant's counsel's VCR.

3. Appellant made no objection on the basis of hearsay.

*Stapleton* concerned the business records exception to the hearsay rule, Tex.R.Crim.Evid. 803(6), it also discussed application of Tex.R.Crim.Evid. 901 as it concerns authentication of sound recordings.

The Court of Appeals in the instant case failed to discuss the Rules, simply holding that *Edwards* was inapplicable because the video tape in question was not made by law enforcement personnel. However, as Appellant correctly observes, nothing in Rule 901 so limits its applicability. Rule 901(a) provides generally that when authentication or identification is necessary, the requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The problem of authentication "arises whenever the relevancy of any evidence depends upon its identity, source, or connection with a particular person, place, thing, or event." S. Goode, O.G. Wellborn & M.M. Sharlot, TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 901.1, 2 Texas Practice 192 (2d Ed.1993). Tex.R.Crim.Evid. 104(b).[4]

■ More specifically, Rule 901(b) lists several non-exclusive examples of how authentication may be accomplished. Rule 901(b)(1), entitled "Testimony of witness with knowledge," provides for authentication of evidence by "[t]estimony that a matter is what it is claimed to be." This rule requires the sponsoring witness to have knowledge that the evidence is what its proponent says

it is. "An obvious method of satisfying the requirement of prima facie identification of an item and/or its source, etc., is to present the testimony of a person with personal knowledge that the item is what it is claimed to be." Goode, Wellborn and Sharlot, supra, § 901.3, 2 Texas Practice at 194.[5] Regarding photographs or motion pictures then, Rule 901(b) allows for authentication to be accomplished by the testimony of any witness who has personal knowledge that the particular item accurately represents the scene or event it purports to portray.[6] Since video tapes are considered photographs for purposes of our evidentiary rules, Tex.R.Crim.Evid. 1001(2),[7] we hold Rule 901(a) and (b) are applicable in the instant case.

In our pre-Rules cases this Court has held that the standard for admissibility of a silent motion picture is different from the audio-visual standard enunciated in *Edwards*. *Gordon v. State*, 784 S.W.2d 410, 411–412 (Tex.Cr.App.1990); *Huffman v. State*, 746 S.W.2d 212 (Tex.Cr.App.1988); *Marras v. State*, 741 S.W.2d 395 (Tex.Cr.App.1987). In *Gordon* this Court recognized our analysis of video admissibility consistently utilized a standard enunciated in *Martin v. State*, 475 S.W.2d 265 (Tex.Cr.App.1972), which concerned the admission of still photographs. There we observed that "[l]ike still photographs, motion pictures may be admitted into evidence where they are properly authenticated, relevant to the issues and not violative

---

4. Rule 104(b), entitled "Relevancy conditioned on fact," provides:

    When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

5. Rule 901(b)(5) is entitled "Voice identification" and may also come into play if conversations between participants depicted on the video tape are relevant to an issue in the case. See *Stapleton,* supra at 786.

6. As one commentator notes:

    For photographs, x-rays, and slides, the witness with knowledge of the scene or event represented by the proffered evidence may authenticate that evidence by stating that such evidence accurately represents the actual scene or event and that it is substantially the same as the event or scene was at the relevant time.[ ]

Motion pictures and photographic evidence may be authenticated by any witness who can testify that they accurately depict the scene in question. There is no requirement that the witness took the photo or saw it taken, or was present when it was taken.[ ] This is sometimes referred to [as] "pictorial testimony" in that the photograph is illustrative of the witness'[ ] testimony and may not be admitted unless it is shown to be authentic by a witness. H.D. Wendorf, D.A. Schlueter & R.R. Barton, TEXAS RULES OF EVIDENCE MANUAL (3d ed. 1991) IX–7—IX–8. (footnotes omitted)

7. Tex.R.Crim.Evid. 1001 states:

    For purposes of this article the following definitions are applicable:
    (2) Photographs. "Photographs" include still photographs, X-ray films, video tapes, and motion pictures.

of the rules established for the admissibility of still photographs." *Gordon,* supra at 412. In addition we held that even if relevant, the probative value of the evidence must not be outweighed by its prejudicial effect. *Ibid.*

In cases regarding admissibility of video tapes with sound, this Court has adopted the *Edwards* test as the correct standard. In *Roy,* we opined:

> Videotapes are a simultaneous audio and visual recording of events. As such, a predicate is required to establish their accuracy and reliability.
>
>    *    *    *    *    *    *
>
> ... Although videotapes are motion pictures as well as sound recordings, we now hold that the Edwards predicate applies to videotapes. Moreover, because of the dual aspect of videotapes they convey a greater indicia of reliability than either film or sound tapes standing alone and at least some of the Edwards elements may also be inferred from the testimony.

*Id.,* 608 S.W.2d at 649.[8]

*Roy* also involved a situation in which the video tape was produced by law enforcement personnel. We are aware of no opinions from this Court involving the use of a video tape produced by the defendant, a co-defendant or another party. However, it is clear that our pre-rules caselaw regarding authentication of video tapes required that either the *Edwards* test be satisfied or a sponsoring witness have knowledge of the scene depicted. *Roy,* supra, at 648 (police officers testified as to transactions recorded on video tapes); *Huffman,* supra, 746 S.W.2d at 221 (witness testified that film accurately and correctly depicted defendant's appearance and demeanor at time it was taken); *Lucas v. State,* 791 S.W.2d 35, 57 (Tex.Cr.App.1989) (video tape produced by county sheriff's personnel admissible because *Edwards* test satisfied); *Marras,* supra 741 S.W.2d at 404 (video tape introduced during testimony of

witness with knowledge of both the scene depicted and the crime was properly admitted). Keeping these precedents in mind we hold that Rule 901 is consistent with our pre-Rules interpretations of cases requiring authentication of video tapes. *See Stapleton,* supra, 868 S.W.2d at 786. We now apply these rules to the pertinent facts.

▮ In the instant case the video tape's relevancy was conditioned upon proper authentication because its relevance depended on its connection with Appellant and her alleged involvement with drugs at her home on the night in question. See Rule 104(b). Put another way, the State was required to furnish testimony of some witness who could verify that the tape was what the State claimed it to be. As stated previously, the video tape was introduced during the testimony of Officer Flores. On direct examination he stated the tape was not produced by law enforcement personnel but had been seized from Conde and King during the search of their motel room on October 14, 1991. In addition, Flores said the copy was an accurate representation of the original and had not been altered. He said Conde, King, Appellant, Admiral, and Appellant's daughter appeared on the tape.

On cross-examination Flores admitted he had never been to Appellant's house but had been told that the Kephart home was depicted on the video. He did not know when the tape had been made or who had made it. Flores also stated that during the initial viewing he had recognized only Conde and King—Sheriff Jung was the one who recognized Appellant and her family as residents of Fredericksburg. Simply stated, Flores could not identify the tape other than to say it came from a camera seized from Conde and King, and Appellant was depicted on it. Because he had no personal knowledge of where or when the tape had been made, he could not also state that the tape accurately

---

8. We also observed that admissibility for motion pictures is the same as that for photographs: All that is required of a witness who observed the object or scene depicted with his naked eye is testimony that the photograph truly and accurately represents that object or scene. Like still photographs, motion pictures are ad-

missible in criminal prosecutions where they are properly authenticated, relevant to the issues and not violative of the rules established for the admissibility of photographs. *Roy,* supra at 649, n. 5, quoting *Williams v. State,* 461 S.W.2d 614, 616 (Tex.Cr.App.1970).

represented the actual scene or event at the time it occurred.[9] It logically follows that the State failed to establish its relevance because a sufficient connection with Appellant could not be shown. Rule 901's predicate for the tape's admissibility was not satisfied even upon a liberal application of that rule. Therefore we hold the video tape was not properly authenticated during Flores' testimony and should not have been admitted or viewed by the jury. Under these circumstances the video tape's admission was an abuse of discretion.

The judgment of the Court of Appeals is reversed and the case is remanded to that court so that they may conduct a harm analysis pursuant to Tex.R.App.Pro. 81(b)(2). *Accord, United States v. Stearns,* 550 F.2d 1167, 1172 (9th Cir.1977).

McCORMICK, P.J., not participating.

WHITE, J., concurs in the result.

---

9. We believe that time was a critical element under these facts. Flores testified that because King appeared near the end of the tape in the motel room this fact alone was enough to place the earlier portions depicting Appellant on the date in question. As a practical matter, even assuming the copy was an accurate representation of the original, video tapes are capable of being erased or taped over. Therefore, since

there was no real way to tell from Flores' testimony when the tape was made, more was needed to place the tape in the correct time frame.