John Wayne CHATHAM, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. C14–92–01266–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 4, 1994.

Jim W. James, Bryan, for appellant.

Stephen Gustitis, Bryan, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

**OPINION**

CANNON, Justice.

John Wayne Chatham, Jr., appeals his conviction for murder. A jury found Chatham guilty of the offense and assessed punishment at 99 years confinement. On appeal, Chatham brings four points of error complaining about the playing of a taped conversation before the jury, the State's closing argument, and that he received ineffective assistance of counsel. We affirm.

The facts, viewed in the light most favorable to the jury's verdict, show that Chatham approached the deceased, Aric Cavitt, in a public park. Chatham had just fired a pistol. Cavitt told him not to fire the gun off in the park because there were children playing. Cavitt then approached Chatham, and Chatham shot him three times. Cavitt's hands were empty. He carried no weapon.

Nonetheless, Chatham put on evidence Cavitt was a violent person, there was ill-will between himself and Cavitt because Cavitt had brought drugs into the work place, Cavitt had threatened him, and that he, Chatham, feared for his safety when Cavitt began to approach him. Chatham said he had never fired a gun before the date he shot Cavitt. In response, the State played a tape before the jury of a telephone conversation between Chatham and his girlfriend. In the tape, Chatham told the woman that he had been in a gunfight in Houston, and that he had a "Tech–9," a type of automatic gun. Moreover, at trial, defense counsel elicited, or permitted the State to elicit, extensive testimony both from Chatham and other witnesses concerning both Cavitt's and Chatham's violent pasts, and extraneous offenses and prior misconduct.

In his first point of error, Chatham contends the court below erred when it permitted a taped conversation between himself and his girlfriend to be played before the jury. He alleges the only reason the State played the tape was to refresh his memory. Chatham posits that when a writing, tape, or any item is used to refresh a witness' recollection, it is to be shown to the witness but not displayed before the jury. The witness is then asked if it refreshes his memory. If it

does, the witness may answer the question. If not, the statement does not automatically become admissible; rather, the State must justify admission of the statement under the rules of evidence.

■ The record demonstrates Chatham did not admit the voice on the tape was his. He further denied making the statements contained on the tape. Therefore, the State was permitted to play the tape before the jury if it could justify admission of the tape under the Texas Rules of Evidence. Moreover, in order to do so, the State was required to lay a proper predicate for admitting the tape. Chatham contends the State failed to do so.

In response, the State argues the proper test for authenticating a tape recording is found in *Edwards v. State,* 551 S.W.2d 731 (Tex.Crim.App.1977). Furthermore, the State alleges, the predicate can be established by circumstantial evidence and without testimony from a contemporaneous witness of the recorded statement. *Wallace v. State,* 782 S.W.2d 854, 857 (Tex.Crim.App.1989). Chatham counters by arguing that even under *Edwards* no proper predicate was laid.

We first note that in two recent cases the Texas Court of Criminal Appeals has examined the viability of the *Edwards* predicate. In *Stapleton v. State,* 868 S.W.2d 781 (Tex. Crim.App.1993), the Court held that *Edwards* is no longer needed as an authoritative guide for the admissibility of electronic recordings because it has been superseded by the Rules of Criminal Evidence. *Id.* at 786. The Court also stated, however, that the germane rules have incorporated substantially the seven-pronged test set forth in *Edwards. Id.* In *Kephart v. State,* 875 S.W.2d 319, 320–321 (Tex.Crim.App.1994), the Court further discussed the applicability of TEX. R.CRIM.EVID. 901 to the authentication of tape recordings. The Court observed that Rule 901(a) provides generally that when authentication or identification is necessary, the requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Court noted that the problem of authentication "arises whenever the relevance of any evidence depends upon its identity, source, or connection with a particular person, place, thing, or events." *Id.* at 321. The Court in *Kephart* stated that, as regards videotape with sound, authentication required either the *Edwards* test be satisfied or a sponsoring witness have knowledge of the scene depicted. *Id.* at 322. The Court in *Kephart* held that Rule 901 is consistent with pre-Rules interpretations of cases requiring authentication of videotapes. *Id.*

In the instant case, the audio tape's relevance was conditioned upon proper authentication because its relevance depended on its connection with Chatham and his alleged statements. The State was required to furnish testimony of some witness who could verify the tape was what the State claimed it to be: a conversation between Chatham and his girlfriend. Chatham identified his and his girlfriend's voices and thus established the authenticity of the recording. The identity of the speakers is clear. Therefore, the State established the tape's relevance because a sufficient connection with Chatham was shown. Furthermore, the trial court could conclude from the recording itself that the device was capable of taking testimony, and that the operator of the device was competent. There was no evidence to suggest the tape was altered. Finally, it is clear the statements made by Chatham were voluntary. Consequently, the tape was properly authenticated. Rule 901's predicate for admissibility of the tape was satisfied.

■ In his second point of error, Chatham complains of the State's closing argument. Chatham states the jury was instructed on self-defense. The instruction was given to the jury that they must believe the State disproved self-defense beyond a reasonable doubt in order to convict. During closing argument, the prosecutor stated,

Before you can acquit him on that self-defense, you have to believe him on that self-defense. You have to believe Mr. Chatham, and what he told you before you can acquit him on self-defense.

Chatham argues this was a blatant misstatement of the law and requires reversal. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex. Crim.App.1990).

■ The State responds that Chatham made no trial objection to the statement and that he failed to preserve error. A trial objection is required to preserve error when an improper jury argument is made. *Johnson v. State,* 604 S.W.2d 128, 132 (Tex.Crim. App.1980); *Webb v. State,* 503 S.W.2d 799, 801 (Tex.Crim.App.1974). Even if we found error was properly preserved, we would overrule Chatham's point. The State correctly maintains that the issue of self-defense was a fact question. Before the jury could acquit Chatham for self-defense, they required evidence that he killed Cavitt in self-defense, e.g., they must have evidence which raised the issue of self-defense. The only evidence adduced at trial raising self-defense was Chatham's own testimony. Consequently, the jury had to believe something Chatham said concerning self-defense, and that statement had to raise a reasonable doubt that Chatham shot in self-defense. The State was then required to disprove self-defense beyond a reasonable doubt. Thus, the State did not misstate the law regarding self-defense in closing argument and it did not make a statement contrary to the jury charge. We overrule Chatham's second point of error.

■ In his final two points of error, Chatham argues that he was denied effective assistance of counsel under both the United States and Texas Constitutions. When challenging the effectiveness of counsel, an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, based upon prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992); *Strickland v. Washington,* 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Miniel,* 831 S.W.2d at 323.

■ Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge in a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Id.* at 692–698, 104 S.Ct. at 2067–2069.

■ We will group Chatham's complaints so that they may be evaluated effectively. Chatham complains that his attorney introduced or permitted to be introduced extensive testimony regarding extraneous offenses, prior misconduct, and other matters. The State counters that defense counsel's decision to elicit this testimony was trial strategy. Their theory is that he wanted to get these things before the jury to lessen the emotional impact. The State also alleges that much of the testimony would have been admissible to rebut Chatham's theory of self-defense. We agree with the State. The key to comprehending defense counsel's strategy is the fact that because Chatham testified he shot Cavitt in self-defense, much of the testimony he complains about would have been admissible by the State to rebut that defensive theory. Thus, defense counsel sought to soften the blow by bringing it out first. Where defense counsel could not bring it out first, he either let it ride, or made an objection.

Specifically, Chatham challenges the following testimony given by him in response to questioning by his own attorney:

1. Chatham stated he had a pager, that it was not used for drug transactions, but that he had the pager so his girlfriends could call him. Chatham now argues this testimony permitted the jury to infer he was a drug dealer.

2. Chatham admitted he lived with a woman who was a known drug dealer.

3. Chatham stated he had been arrested and charged with possession of an illegal drug, that he had been framed by Officer Freddie Komar, and that the charges had been dropped.

4. Chatham testified he had been involved in, and charged with, a misdemeanor assault at a nightclub. He

admitted he received deferred adjudication.

5. Chatham admitted he had been charged with misdemeanor theft by receiving stolen goods, and the charge was pending against him at the time of trial.

6. Chatham stated there was currently a motion pending to revoke his probation because he had a urine screen which had tested positive for cocaine.

7. Chatham testified he had been charged with carrying an unlawful weapon in Houston.

8. Chatham said that a week to ten days before he shot Cavitt, he had been involved in a fight with a man named Battise and that he had used a broken bottle as a weapon.

Chatham further argues that his attorney was ineffective for permitting the State to elicit the following statements and/or testimony regarding extraneous offenses:

1. Officer Freddie Komar testified he had arrested Chatham for possession of a bottle containing 19 rocks of cocaine. Officer Komar further testified that he was angry the charges had been dismissed.

2. The aforementioned tape recording in which Chatham states to his girlfriend that he had been involved in a gunfight in Houston and he carried a Tech–9, an automatic weapon.

It is a fundamental rule of criminal jurisprudence that an accused must be tried only for the offense charged and not for being a criminal or bad person generally. *Templin v. State*, 711 S.W.2d 30, 32 (Tex.Crim.App.1986); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972). Consequently, courts as a general rule do not permit the admission into evidence of extraneous offenses and prior misconduct. *Id.* There are exceptions to the rule, however, and one such exception permits introduction of extraneous offenses and prior misconduct to refute a defensive theory. *Id.* at 33.

We again note Chatham testified on his behalf regarding his relationship with Cavitt, and the facts and circumstances surrounding his justification for self-defense. He stated he shot Cavitt in self defense. He testified that he objected to having drugs around him. He testified he had told Cavitt not to bring drugs to work because they would get into trouble. He testified that Cavitt threatened him. Finally, he testified that before he shot Cavitt, he had never fired a gun before. To counter Chatham's testimony, the State was permitted to cross-examine him on these matters. Consequently, the State would have been able to bring out testimony concerning prior misconduct and extraneous offenses to refute these elements of Chatham's defensive theory. Chatham's own attorney thwarted any attempt the State could have made to bring this testimony out by bringing it out himself on direct examination and giving Chatham a chance to explain these matters away.

In Texas, when an accused raises the issue of self-defense, the State may introduce rebuttal evidence of prior violent acts by the accused in order to show his intent. *Halliburton v. State*, 528 S.W.2d 216, 218–219 (Tex.Crim.App.1975). Thus, testimony concerning Chatham's violent behavior would have been admissible to refute his theory that he shot Cavitt in self-defense. This includes his own testimony that (1) he had been involved in, and charged with, a misdemeanor assault at a nightclub, (2) a week to ten days before he shot Cavitt, he had been involved in a fight with a man named Battise and that he had used a broken bottle as a weapon, and (3) he had been charged with carrying an illegal weapon. It also includes that portion of the tape recording where Chatham stated he had been involved in a shootout in Houston and carried an automatic weapon. Likewise, a key aspect to Chatham's self-defense theory was his unfamiliarity with guns. To refute this, the State was entitled to introduce those portions of the taped conversation regarding Chatham's being involved in a gunfight in Houston and his carrying an automatic weapon.

Moreover, once Chatham asserted that he objected to having drugs around him, the State would have been permitted to rebut that assertion as well. *Templin*, 711 S.W.2d

at 32. The State would have been able to introduce evidence that Chatham lived with a known drug dealer, his urine screen had tested positive for cocaine, and he had been charged with possession of cocaine, but the charges had been dropped.

Thus, much of the testimony about which Chatham complains was admissible. To take a leaf from the pages of Chatham's brief, "[t]o pass over the admission of prejudicial and arguably inadmissible evidence may be strategic; to pass over the admission of prejudicial and clearly inadmissible evidence . . . has no strategic value." *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir.1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 833, 88 L.Ed.2d 804 (1986). Much of the evidence complained about was clearly admissible.

We are left, however, with the references to Chatham's electronic pager and to the admission of testimony that charges were pending against him for misdemeanor theft by receiving. We agree the fact Chatham was charged with theft by receiving was probably inadmissible. An ineffectiveness of counsel claim, however, cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Consequently, we will address that point when we examine the totality of defense counsel's representation later.

■ Chatham proposes that testimony concerning the pager permitted the jury to infer that he was a drug dealer. Presumably, the syllogism is "Chatham carries a pager, drug dealers carry pagers, therefore, Chatham must be a drug dealer." We find such reasoning fatuous. Many people carry electronic pagers. This does not mean they are drug dealers. Furthermore, Chatham's own testimony refuted such logic by explaining he had a pager so that his girlfriends could call him. Furthermore, this Court is not prepared to hold that eliciting this testimony was not sound trial strategy to forestall an attempt by the State to characterize the fact Chatham carried a pager as conduct which was somehow villainous.

■ Chatham points to many other examples of how his attorney at trial was ineffective. He argues, for example, that only two African–American venirepersons were on the jury panel and both were dismissed for cause by agreement. He contends that his attorney made no attempt to save or rehabilitate either juror. There is nothing, however, to indicate counsel's performance fell below an objective standard of reasonableness. Chatham fails to demonstrate how dismissal of these jurors, or the composition of the jury affected the outcome.

Chatham also complains the State volunteered information that one witness feared for the safety of her family if she testified. Chatham contends counsel should have objected to this remark, obtained an instruction to disregard, and move for a mistrial. Counsel did none of these things. Because an ineffectiveness of counsel claim cannot be demonstrated by isolating one portion of counsel's representation, however, *McFarland v. State*, 845 S.W.2d at 843, we will evaluate the effect of this error within the context of the totality of the representation later.

■ Chatham further alleges counsel practically admitted and anticipated guilt in his closing argument. Counsel told the jury he proposed to bring them evidence that the victim was a very violent person and Chatham acted in self defense. He also candidly admitted he was going to discuss certain things in Chatham's past that he would attempt to clear up with them "either now or at the punishment stage, *if that becomes necessary* " (emphasis ours). Chatham alleges this last statement anticipated the upcoming punishment phase. We disagree. Clearly, counsel qualified his final statement with the words, "if that becomes necessary." He did not anticipate the punishment phase, he merely acknowledged it was a possibility. Moreover, in light of the fact Chatham was accused of shooting and killing Cavitt in front of three eye-witnesses in a neighborhood park full of people, the State properly points out that trial counsel was not unreasonable for anticipating the punishment phase.

■ Chatham challenges counsel's strategy of calling Annie Harrell to the stand. Ms. Harrell testified that in October, 1990, her son Merrick King came into her home. She stated he had been beaten and he was cut on the face, jaw, forehead, neck and upper part of the chest. Counsel then introduced into evidence an indictment alleging that on October 6, 1990, Merrick King was the victim of an aggravated assault by Aric Cavitt. At the time of trial Merrick King was in jail. Chatham argues Merrick King could have been brought from the jail on a bench warrant and made to testify. Chatham proposes King would have been the best witness, and that counsel was ineffective because he failed to have King testify.

We disagree. The relevant and material fact counsel sought to introduce was that Cavitt assaulted King. The purpose of the testimony and exhibit was to demonstrate that Cavitt was a violent person. It did. This Court will not second guess an attorney's decision on how to develop his case. That is trial strategy. The fact another attorney might have pursued another trial strategy will not support a finding of ineffectiveness of counsel. *Ortiz v. State*, 866 S.W.2d 312, 315 (Tex.App.—Houston [14th Dist.1993, pet. ref'd). Even if we were inclined to find counsel's performance somehow fell below an objective standard of reasonableness, certainly it was not sufficient to undermine confidence in the outcome. Counsel's method of introducing this evidence accomplished what it sought to accomplish: it established that Cavitt was a violent person.

■ During cross-examination of Ms. Harrell, the State elicited testimony that Merrick King had been to prison four times and was currently in prison for burglary of a habitation. Chatham argues that his attorney should have objected to the admission of this testimony. However, this testimony did not prejudice Chatham. It may well have discredited King, but then, Merrick King was not on trial, Chatham was. Chatham has failed to demonstrate how defense counsel's failure to object fell below an objective standard of reasonableness. Nor has Chatham shown how Ms. Harrell's testimony undermined confidence in the outcome.

■ Chatham also complains that his attorney provoked testimony that he was confined in jail at the time of the trial. Chatham theorizes that because the State may not inform the jury that a defendant is jailed at the time of trial, defense counsel should likewise be constrained.

We disagree. There are many things a prosecutor is forbidden to do that defense counsel may undertake. For example, it is elementary law that a prosecutor may not call a defendant to the stand or make reference to an accused's refusal to testify. Nonetheless, defense counsel is permitted to do these things. We see no reason defense counsel should be deemed ineffective for choosing to inform a jury his defendant is incarcerated if he judges it to be sound trial strategy. We overrule this complaint.

■ Finally, Chatham argues that defense counsel failed to object to a misstatement of the law in the prosecutor's closing argument. We addressed the effect of the State's closing argument in point of error number two. Finding no error, we now rule that Chatham's defense attorney could not have been ineffective for failing to object to the statement because it was proper.

■ Chatham further argues that his attorney was ineffective because he failed to object to the State's closing argument when the prosecutor referred to numerous unadjudicated offenses. The State contends the prosecutor's argument was proper. The state of the law at the time of trial permitted evidence of unadjudicated offenses to be admitted in the punishment phase of a noncapital trial. *McMillian v. State*, 799 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1990, vacated 844 S.W.2d 749 (Tex.Crim.App.1993)). It was not until after Chatham's trial that the Texas Court of Criminal Appeals handed down its decision in *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex.Crim.App.1992) holding that evidence of unadjudicated offenses was not admissible during the punishment phase of trial for noncapital offenses. Because admission of unadjudicated offenses were arguably admissible during the punishment phase of trial at the time Chatham was tried, we will not say that his attorney performed out-

side the wide range of professionally competent assistance by not objecting.

 We now turn to the issue of the effectiveness of counsel as judged by the totality of the representation. The State argues that Chatham's attorney performed well within a wide range of professionally competent assistance as contemplated by *Strickland.* The State notes that Defense counsel filed and obtained rulings on a pretrial discovery motion well in advance of trial. Defense counsel also filed an Application for a writ of Habeas Corpus to obtain bond reduction for Chatham before trial. The record supports these assertions.

Defense counsel conducted voir dire with an eye towards Chatham's self-defense claim. He discussed the law of self-defense and how it might play out under the facts of the case. He also questioned the jury panel on the punishment range for murder including the granting of probation.

Defense counsel actively cross-examined each of the State's witnesses except two. He prompted testimony from the State's witnesses regarding the victim's reputation for aggressive behavior and his ill-will toward Chatham. And, during his case in chief, defense counsel presented testimony concerning prior acts of violence by Cavitt. He then called Chatham to the stand to testify how he shot the victim in self-defense.

At the conclusion of the guilt/innocence stage of the trial, defense counsel successfully petitioned the court to include a jury instruction on the consideration of extraneous offenses and a charge on the lesser included offense of voluntary manslaughter. He marshalled all the evidence he could in closing argument to support Chatham's self-defense claim. He further argued that Chatham was guilty at most of voluntary manslaughter.

Chatham argues that extraneous matters were erroneously admitted, through questioning by his trial counsel as well as during cross-examination by the State, and that this resulted in ineffective assistance. He contends admission of these matters had no strategic value and that, but for the alleged errors, the result of the trial would have been different. We disagree.

This was a case of cold-blooded murder. No less than three eye-witnesses were expected to testify, and did testify, that Chatham walked up to Cavitt and, without provocation, shot him three times. Consequently, from a strategic standpoint, Chatham's attorney had only two choices open to him: (1) do not put Chatham on the stand let the killing go unexplained, or (2) have Chatham testify and explain why he shot Cavitt.

Placing Chatham on the stand to explain why he shot in self-defense necessarily entailed certain risks, not the least of which was the threat the prosecution would seek to discredit Chatham's theory. The three essential elements to Chatham's theory of defense were Chatham's objection to drugs, Cavitt's propensity for violence, and Chatham's own assertion that he had never fired a gun before.

The prosecution was entitled to refute these claims. Because there was ample evidence with which to do so, defense counsel adopted the tactic of having Chatham admit to the various extraneous matters first, and then explain each one away. In this manner, counsel may have hoped to diffuse the impact these matters would have upon the jury.

Thus, examining the record, we see that Chatham explained the reason animosity existed between himself and Cavitt was because Chatham objected to having drugs in his presence. He attempted to explain the reason he had been charged with possession of narcotics was because he was framed by the police officer. He also explained that his urine screen came up positive because he lived with a woman who was a known drug dealer. He also attempted to explain away the fact that he owned a pager, although, as we have already noted, the fact that he owned a pager does not constitute, in any manner, evidence that he was a drug dealer.

Furthermore, appellant admitted to his violent past. This was bound to come out on cross-examination. *See, Halliburton v. State,* 528 S.W.2d 216 (Tex.Crim.App.1975). Defense counsel elicited this testimony from Chatham in advance to diffuse the impact the evidence would have on the jury. The strat-

egy whereby defense counsel washes out a defendant's 'dirty laundry' is a common one.

■ As regards the admission of the pending charge for misdemeanor theft, and the statement by Mrs. Harrel that she feared for her family's safety, looking at the totality of counsel's representation, and in light of the overwhelming evidence of Chatham's guilt, violent past, and criminal history, we do not find counsel's conduct fell below prevailing professional norms, or that permitting this testimony undermined confidence in the outcome. There was ample evidence in the record upon which the jury could convict, and just as much evidence to justify their decision to assess punishment at 99 years confinement. Consequently, we decline to hold counsel's performance deficient. We likewise decline to hold that counsel's overall trial strategy was deficient. It was not unreasonable in light of prevailing professional norms. Furthermore, it did not undermine confidence in the outcome of this trial. We overrule Chatham's third and fourth points of error. We affirm.