COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ABEL GONZALEZ, | § | No. 08-23-00306-CR |
| Appellant, | § | Appeal from the |
| v. | § | 399th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2020-CR-11841) |

## MEMORANDUM OPINION

Following his jury trial and conviction for aggravated assault with a deadly weapon, Appellant Abel Gonzales contends the trial court abused its discretion by admitting two exhibits: excerpts of a cell phone video and police body-worn camera footage. Finding that the trial court did not abuse its discretion in admitting the evidence, we affirm.

## I. BACKGROUND[1]

### A. The bus stop incident

Stephanie Guerrero was approaching a southside San Antonio bus stop to wait for her ride downtown.[2] Guerrero was suddenly confronted by Appellant who was yelling profanities and

---

[1] The factual recitations are taken from the trial testimony and exhibits.

[2] This case was transferred from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

threatening her. She had never seen Appellant before. Appellant stepped towards her and yelled, "This stupid bitch better not come to my bus stop. She better stay the f--- away from me. I swear I'm going to f--- her up." Guerrero responded, "Excuse me? Are you talking to me?" Appellant then got "up in [Guerrero's] face," and said, "Yeah, I'm talking to you." The interaction then became physical. Appellant began swinging at Guerrero; she initially believed he was "hitting" her hard in the stomach and on the throat. Guerrero tried to defend herself by blocking, hitting back, and attempting to push Appellant off her.

Guerrero felt pain in her stomach and her throat. Suddenly, Appellant stopped the attack and backed away. When Guerrero looked down, she saw blood staining her shirt. Guerrero realized Appellant had stabbed her in the throat and stomach. Thinking she would die, Guerrero started crying.

Two bystanders arrived at the scene and used a towel and piece of clothing to apply pressure to stop the bleeding. Guerrero then called 911 on her own cell phone; she was able to speak to the dispatcher and explain what had happened. San Antonio Police Office Eduardo Torres was dispatched to investigate a possible stabbing. Torres was the first police officer to arrive at the scene. He was wearing a body-worn camera issued by the police department. Torres activated the camera (meaning it began recording) when he arrived at the scene.

Officer Torres initially saw a group of people; as he got closer, he realized the female victim (later identified as Guerrero) was lying on the ground. Torres saw blood and noticed a sweater on Guerrero's neck. Guerrero appeared distraught and seemed pale. She started yelling when Torres also applied pressure to the sweater around her neck. When the ambulance arrived, the EMTs removed the sweater and Torres observed a bleeding puncture wound in the middle of Guerrero's neck.

Appellant was later arrested and charged with aggravated assault with a deadly weapon. His trial was to a jury. The State presented testimony which included a cell phone video of the assault taken by a bystander. The State also admitted excerpts of the body-worn camera footage taken by Officer Torres. Appellant put on no witnesses. Following the jury's brief deliberations, Appellant was convicted of aggravated assault with a deadly weapon.

## B. Appellant's objections to State's exhibits at trial

### (1) Cell phone footage

The bystander who took the cell phone video did not testify at trial. Instead, the State authenticated the video by having Guerrero, who did testify, watch it outside the presence of the jury and confirm that it accurately depicted what happened.

The cell phone footage lasts about 30 seconds. It was taken from the inside of a vehicle looking across the street towards the bus stop. Guerrero and Appellant can be seen standing several feet apart in front of the bus stop. They first appear to be in a heated discussion as Guerrero is waiving her arms and Appellant is staring in her direction. Appellant then quickly strides much closer to Guerrero and appears to swing at her with both arms. He is seen striking her violently with his right hand (evidence at trial revealed Appellant was striking Guerrero with a three-inch knife). Guerrero bends over and appears to hold her stomach. Guerrero and Appellant then each appear to bend over to pick up something from the ground. The cell phone is then jogged downward for a few seconds showing only a vehicle dashboard. In the final seconds of the video, Appellant is seen walking slowly on the sidewalk away from the bus stop. Guerrero is seen slightly hunched over under the bus stop canopy; her back is to the camera, and she appears to be coughing.

Relevant here, Appellant's counsel objected to the footage arguing that the footage could not be authenticated by Guerrero under Rule 901 of the Texas Rules of Evidence. Specifically, Appellant's counsel contended that Guerrero could not verify any details about the production of

3

the footage, including whether it had any additions or deletions. Appellant urged that only the person who recorded the footage could state what that person was doing at the time, where he was located, whether his camera was working properly, and whether he deleted any part of the footage.

The trial court disagreed stating:

> But if [Guerrero] can say this is the video and that's what was happening to me, then she's authenticated it. It doesn't matter who's making the video. If she can say, yeah, that's what happened to me, she's authenticated it. . . . And [if Guerrero can say] that's the man who was doing it to me, then the only -- the only objection you have at this particular point that may be something the Court would consider would be a relevance objection because she hasn't identified this defendant [in the courtroom] as being the person in the video.

And on direct examination before its admission, Guerrero testified the footage fairly and accurately depicted what happened to her on the day of the incident. Guerrero confirmed that she saw herself and Appellant reflected in the footage; she then identified Appellant in the courtroom. Guerrero testified that, to her knowledge, the footage had not been altered in any way.

### (2) Officer Torres's body-worn camera footage

Officer Torres also testified at trial. The State offered a clip of Officer Torres's body-worn camera footage from the incident date. The footage lasts two minutes and 15 seconds. Appellant focuses his complaint on a segment of that footage that shows Guerrero lying on her back on the asphalt of a parking space in front of a bus stop canopy. Torres bends down at Guerrero's right side to examine Guerrero more closely; she is crying and moaning and appears to be writhing in pain. A fleece jacket or blanket and what looks like a smaller towel covers her neck and most of her torso. Torres's hands are seen as he applies pressure on the blanket at the location of Guerrero's neck. The red flashing lights of an ambulance or firetruck are seen several seconds later. Then the shoes and orange-gloved hands of an EMT come into view near Guerrero's head on her left side. Relieving Torres, the EMT then resumes the application of pressure to Guerrero's neck. The camera view then pans wider to reflect at least three other EMTs, who begin tending to Guerrero.

One of the EMTs holds back the blanket/jacket while another removes what looks like a bloody handkerchief from Guerrero's neck, revealing a puncture wound. Guerrero is seen writhing in pain during this process, after which an EMT directly applies pressure to the wound with his gloved fingers. The camera view then pans wider to reflect a firetruck parked on the street (behind the bus stop) and a passing police vehicle. The footage concludes with Guerrero on the asphalt with the EMTs around her.

Appellant objected to the bodycam arguing the footage presented the danger of unfair prejudice [to Appellant] under Rule 403 of the Texas Rules of Evidence. According to Appellant's counsel, the footage was inflammatory, cumulative, was more prejudicial than probative, would give the jury an irrational impression, and would tempt the jury into making a finding of guilt based on prejudicial evidence. (Appellant's counsel made no objection based on the relevance of the body-worn camera footage). After reviewing the body-worn camera footage, the trial court overruled all the objections, and admitted the Exhibit.

## II. ISSUES ON APPEAL

Appellant presents two issues for our review. First, he contends the trial court abused its discretion when it admitted excerpts of the cell phone video footage because it could not have been authenticated by Guerrero under Rule 901. In his second issue, Appellant contends the trial court abused its discretion by admitting excerpts from the police officer's body-worn camera footage over Appellant's Rule 403 objection.

## III. DISCUSSION

### A. Standard of review

We review a trial judge's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). This is true for both of the evidentiary

arguments that Appellant makes. *Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006) (holding Rule 403 objections governed by abuse of discretion); *Balderrama v. State*, No. 04-21-00461-CR, 2023 WL 3609215, at *3 (Tex. App.—San Antonio, May 24, 2023) (mem. op., not designated for publication) (holding "[t]he trial court's determination of whether the proponent has met this threshold requirement [of authenticating an item of evidence pursuant to Rule 901] is subject to appellate review for an abuse of discretion [.]").

A trial court abuses its discretion when the decision falls outside the zone of reasonable disagreement. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). Stated otherwise, the trial court abuses its discretion when it acts "without reference to any guiding rules and principles or acts in a manner that is arbitrary or capricious." *Morris v. State*, 123 S.W.3d 425, 426 (Tex. App.—San Antonio 2003, pet. ref'd) (quoting *Lam v. State*, 25 S.W.3d 233, 236–37 (Tex. App.—San Antonio 2000, no pet.)). That said, a trial court is given wide latitude in its decision to admit or exclude evidence. *Strache v. State*, No. 04 -12-00731-CR, 2013 WL 2368301 at *2 (Tex. App.—San Antonio May 29, 2013, no pet.) (mem. op., not designated for publication). This is so because "trial courts . . . are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007). We may not substitute our own decision for that of the trial court. *Gonzalez*, 544 S.W.3d at 370.

**B.** **The trial court did not abuse its discretion in admitting the cell phone video**

Rule 901 of the Texas Rules of Evidence governs authentication of an item of evidence. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what its proponent claims it is." Tex. R. Evid. 901(a). At trial, the jury determines "whether an item of evidence is indeed, what the proponent claims"; the trial court only makes "the preliminary determination that the proponent

6

. . . has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). Said another way, the trial court need not be convinced that the item is authentic; it need only determine that a reasonable juror could find that the item is authentic. *See Watson v. State*, 421 S.W.3d 186, 190 (Tex. App.—San Antonio 2013, pet. ref'd) (citing *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007)).

A party authenticates video footage in the same way as still photos. *See Gordon v. State*, 784 S.W.2d 410, 411 (Tex. Crim. App. 1990) (moving pictures are just a succession of photographs and are authenticated and admissible under the same rules that surround the introduction of a still photograph). "Motion pictures" are admissible when they are properly authenticated, relevant to an issue, and not violative of the rules of evidence for the admissibility of photographs. *Id*. To authenticate a "motion picture," it must be shown by extrinsic evidence to be a "true and faithful representation of the place or object it purports to represent as it existed at time pertinent to the injury." *Richardson v. Missouri-K.-T. R. Co. of Texas*, 205 S.W.2d 819, 822 (Tex. App.—Fort Worth 1947, writ dism'd).

Appellant argues that only the person who operated the cell phone or actually recorded the footage could properly authenticate it under Rule 901. Yet Appellant does not cite any controlling authority to support that proposition.[3] A recent Fourth Court of Appeals case directly cuts against the claim. *See Hines v. State*, 383 S.W.3d 615, 624 (Tex. App.—San Antonio 2012, pet. ref'd).

In *Hines*, the defendant argued the trial court erroneously admitted a police officer's dashboard-camera video because it was not properly authenticated under Rule 901. *Hines*, 383

---

[3] At one time, *Kephart v. State*, 875 S.W.2d 319 (Tex. Crim. App. 1994) was read to support that claim, but it was overruled by *Angleton v. State*, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998) (en banc). *Angleton* held that a law enforcement officer could authenticate an audio based on his ability to (1) recognize the voices on an audiotape from prior conversations with those persons; (2) verify that an enhanced version accurately reflected the original (with the exception of background noise); and (3) further testify to the location where the tape was found. *Id*.

S.W.3d at 618, 624. According to the defendant, the video footage could not be properly authenticated by the sponsoring law enforcement officer because that officer was unable to verify whether the footage included any "deletions, additions or alterations." *Id*. at 624. Further, the sponsoring officer also could not authenticate the footage because it was recorded by another officer's camera, so the sponsoring officer was not the person who "made" it. *Id.*

Reiterating Rule 901's clear instruction that authentication is satisfied by evidence sufficient to support a finding that the matter is what the proponent claims it is, the court concluded the trial court did not abuse its discretion: the trial court could have reasonably believed that a reasonable juror could find that the video footage accurately portrayed the incident scene as it existed on the night the incident occurred. *Id*. at 624. The court noted the sponsoring witness was neither required to be the "maker" of the recording nor to have participated in the conversation or events represented to sufficiently authenticate them; and the allegedly "poor" quality of the footage did not prevent its authentication as long as the sponsoring witness verified the events were fairly and accurately depicted. *Id*. at 624–25.

*Hines* thus rejects some of the same arguments Appellant advances here. Appellant faults the cell phone footage because it does not portray all of the incident events and the camera "moves away from the action and back again." Based on this, Appellant contends the sponsoring witness must be someone who can verify whether any deletions or alterations were made. Appellant adds that because the footage was not filmed by Guerrero or on Guerrero's phone, she could not verify the phone's capacity to film or whether the camera was working properly that day. As discussed, *Hines* readily disposes of these arguments.[4] Guerrero testified that the video accurately shows

---

[4] Appellant also contends that Guerrero is a "biased" witness, implying her sponsoring testimony is untrustworthy. Rule 901, however, does not require the trial court to make a threshold determination of the *credibility* of the evidence proffered by the proponent to establish authenticity. *See Butler v. State*, 459 S.W.3d 595, 605 (Tex. Crim. App. 2015) (citing Tex. R. Evid. 901(b)(1)).

8

what occurred that day. The trial court did not abuse its discretion in overruling Appellant's authentication objection.

We overrule Appellant's first issue.

### C. The trial court did not abuse its discretion in admitting the police body-worn camera footage

In general, relevant evidence is admissible, irrelevant evidence is not. *Gonzalez*, 544 S.W.3d at 370 (citing Tex. R. Evid. 402). But relevance is also tempered by Rule 403 that allows a trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. The rule entails a balancing test:

> Rule 403 recognizes that relevance alone does not ensure admissibility. A cost/benefit analysis must often be employed. Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. The issue is whether the search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence. In making this determination, [a trial] court must assess the probative value of the proffered item, as well as the harmful consequences . . . that might flow from its admission.

*Gigliobianco v. State*, 210 S.W.3d 637, 640–41 (Tex. Crim. App. 2006). Consistent with the presumption of admissibility pertaining to relevant evidence, trial courts are instructed to favor admission in close cases. *See Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003).

In an argument that comprises a scant three sentences of his brief, Appellant contends that the balance of Rule 403's six factors required the trial court to exclude the bodycam video. Appellant contends the trial abused its discretion in admitting Officer Torres's body-worn camera footage because it was more "unfairly prejudicial" than probative: specifically, the footage portrays Guerrero lying on the ground, post-stabbing, "screaming that she is hurt." Without substantive analysis, Appellant also argues the footage was inflammatory, gave the jury an

9

"irrational impression," and was only cumulative, adding nothing to the jury's understanding of the offense charged. We disagree.

All these premises are wrong. "Gruesome" images are not inherently prejudicial. *See Gordon v. State*, 784 S.W.2d 410, 412–13 (Tex. Crim. App. 1990) (silent video depicting murder scene and close-up of deceased, which appellant described as "obscene," had probative value not outweighed by prejudicial effect); *Purtell v. State*, 761 S.W.2d 360, 370 (Tex. Crim. App. 1988) (finding no abuse of discretion where trial court admitted allegedly gruesome photos reflecting deceased with towel used to strangle him); *Lopez v. State*, 630 S.W.2d 936, 938–39 (Tex. Crim. App. [Panel Op.] 1982) (finding no error in trial court's admission of slides portraying deceased's "bloody wounds" where slides properly authenticated by attending physician and verbal descriptions of the deceased's body were admissible.).

We are guided by the basic rules for the admission of photographs (and video footage) set out in *Martin v. State*, 475 S.W.2d 265 (Tex. Crim. App. 1972) (*overruled on other grounds by Jackson v. State*, 548 S.W.2d 685 (Tex. Crim. App. 1977)). In *Martin*, the Court stated:

> [I]f a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. If a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible.

*Martin*, 475 S.W.2d at 267. The Court expanded the *Martin* holding to include the manner in which Rule 403 will be applied by the Court:

> If a verbal description of the item, be it a body, a weapon, or a location is admissible, a photograph depicting the same is also admissible. Only if the probative value of the photograph were very slight and the inflammatory aspects great would it be an abuse of discretion to admit the photograph.

10

*See Purtell*, 761 S.W.2d at 370–71 (affirming trial court admission of photos reflecting divers recovering murder weapon; photos were more probative than prejudicial where appellant had previously confessed he disposed of weapons in the river).

Nor is the footage unfairly prejudicial because it reflected Guerrero "screaming" on the ground. While the footage reflects Guerrero moaning and crying, she is not screaming. When we consider the other evidence which was admitted and is uncontested on appeal (including the 911 calls, the photos showing Guerrero's blood at the bus stop, and the law enforcement officers' testimony confirming Appellant's admissions about the stabbing), the body-worn camera footage presented nothing shocking or egregiously inflammatory to the jury. *See Green v. State*, 682 S.W.2d 271, 292 (Tex. Crim. App. 1984) (en banc) (confirming where a verbal description of the item, be it a body, a weapon, or a location is admissible, a photograph [or video footage] depicting the same is also admissible.).

The evidence was relevant. The footage depicted the natural and direct results of the assault. Further, it made more probable Guerrero's testimony about the location of the incident and her injury; it also clarified and made more probable Torres's testimony about the incident events as he observed them. If the jurors entertained any doubts about Guerrero's or Torres's credibility, the body-worn camera footage corroborated the witnesses' testimony about post-incident events, especially in regard to Guerrero's immediate pain and suffering.

Nor are we persuaded that the body-worn camera footage had a tendency to confuse or distract the jury from the main issues. *See Gigliobianco*, 210 S.W.3d at 641 (clarifying the meaning of Rule 403's third countervailing phrase, "confusing the issues."). The main issue in the case was whether Appellant intentionally assaulted Guerrero with a deadly weapon. When a person is the victim of an attack with a weapon (in this case, a knife) that has the potential to cause death, it is

11

logical that there would be evidence of wounds and suffering as a result. The footage presented just that.

Lasting just over two minutes, the body-worn camera footage cannot be said to have "consume[d] an inordinate amount of time." *See id.* at 641. It also was not cumulative and did not "repeat evidence already admitted." *See id.* ("the rule's [final] phrases, 'undue delay' and 'needless presentation of cumulative evidence,' are, we think, self-explanatory and concern the efficiency of the trial . . . rather than the threat of an inaccurate decision."). While the footage presented a visual demonstration of post-incident events about which the jury had heard testimony, it also included occurrences exclusive to Torres's investigation: arriving at the scene, talking briefly with bystanders, comforting Guerrero, and coordinating care with EMTs. That evidence also confirmed the timeline of law enforcement's and the ambulance's arrival at the scene.

In sum, all relevant evidence is prejudicial in the sense it tends to prove a proposition; the question for Rule 403 is whether it is unfairly prejudicial. *See Montgomery v. State*, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990), on reh'g (June 19, 1991) ("It must be remembered . . . that virtually all evidence proffered by a party to a lawsuit will be prejudicial to the opposing party . . . only 'unfair' prejudice provides the basis for exclusion of relevant evidence.") (internal citation and quotation omitted). Appellant fails to persuade us that this evidence was unfairly prejudicial. We conclude the trial court did not abuse its discretion in failing to find unfair prejudice. Appellant's second issue is overruled.

## IV.  CONCLUSION

Because we find the trial court did not abuse its discretion in admitting either the cell phone footage or the body-worn camera footage during Appellant's trial, we affirm.

JEFF ALLEY, Chief Justice

September 13, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)