charlie joe tinker long



 NO. 12-00-00233-CR





IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


MARCUS JOHNIGAN,
§
 APPEAL FROM THE 114 TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

 Marcus Johnigan ("Appellant") appeals his conviction for delivery of a controlled substance. 
A jury returned a verdict of guilty and assessed his punishment at imprisonment for forty years and
a $5,000.00 fine. Appellant raises two issues on appeal. We affirm.


Background


 A confidential informant, who was working for the Texas Department of Public Safety
("DPS") in the course of a DPS drug investigation, and who had worked for several law enforcement
agencies as an informant for more than eleven years, contacted a suspected drug dealer. Through
the suspected drug dealer, the confidential informant was taken to a car wash, then to a Tyler house,
where he purchased crack cocaine from a man identified as "Marcus." Upon leaving the location
of the drug delivery, the DPS officer supervising the informant contacted the Tyler police
department, which has a comprehensive, "in house" identification system that lists all persons known
to the police and their association with various addresses. The DPS officer asked if anyone known
as "Marcus" was associated with the house where the drug sale occurred. An inquiry was entered
into the Tyler police system, and the officer was immediately informed that a "Marcus Johnigan"
was associated with that address. The officer then obtained Marcus Johnigan's driver's license
photograph from the driver's license files, which he showed to the informant within minutes of the
drug delivery. The informant unequivocally identified Appellant as the person who sold him the
cocaine, stating unequivocally, "That's him." Based on the delivery of cocaine, a search warrant
was served at the location of the drug sale. The police seized several guns, crack cocaine, and
Appellant's wallet and driver's license from the room in which the dealer retrieved the drugs he sold
to the informant.

 Appellant filed a pre-trial motion to suppress the informant's in-court identification of him,
which the trial court denied. At trial, the informant identified Appellant as the man who sold him
crack cocaine. The jury convicted Appellant of delivery of a controlled substance and Appellant
filed a timely notice of appeal. 


Suppression of Identification

 In his first issue, Appellant contends the trial court erred in not suppressing the informant's
in-court identification of him because it derived from an improperly suggestive, single photo lineup
consisting only of his driver's license.

 Initially, it should be noted that a single photograph "line up" is improperly suggestive and
viewed with suspicion. Manson v. Brathwaite, 432 U.S. 98, 109 & 117, (1) 97 S. Ct. 2243, 2250 &
2254, 53 L. Ed. 2d 130 (1977); Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). A
suggestive identification scenario, such as a single photograph line up, is disapproved because the
suggestive line up increases the likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 199,
93 S. Ct. 375, 411, 34 L. Ed. 2d 401 (1972). A two-step analysis is used to determine the
admissibility of an in-court identification. First, the photographic display cannot be impermissibly
suggestive. Second, based on the totality of the circumstances, the suggestive display cannot give
rise to a "substantial likelihood of irreparable misidentification." Delk, 855 S.W.2d at 706. 
However, the United States Supreme Court has stated that a conviction "based on eyewitness
identification at trial following a pretrial identification by photograph will be set aside on that ground
only if the photographic identification procedure was so impermissibly suggestive as to give rise to
a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S.
377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247 (1968). The core issue is ". . . whether under the
'totality of the circumstances' the identification was reliable even though the confrontation procedure
was suggestive." Neil, 409 U.S. at 200, 93 S. Ct. at 411. 

 Five factors are considered to evaluate the likelihood of misidentification: (1) the opportunity
of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3)
the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated
by the witness at the confrontation, and (5) the length of time between the crime and the
confrontation. See Neil, 409 U.S. at 199, 93 S. Ct. at 411; see also Manson, 432 U.S. at 114, 97 S.
Ct. at 2253.

 Although not preferred, single person identification line ups have been held constitutionally
admissible. In Neil, the United States Supreme Court upheld a conviction where the police, who had
shown the victim numerous photographs of possible suspects, apprehended the accused, and, unable
to find similar persons with whom to construct a line up, brought only the accused to the victim, who
identified him as the rapist. Neil, 409 U.S. at 195, 93 S. Ct. at 409. 

 In Delk, the witness, after being informed a person had been apprehended for her husband's
murder, asked the sheriff to let her see his photograph. The sheriff handed her only Delk's
photograph. She identified the person in the photograph as the person she had seen driving her
husband's car shortly before his body was found. Delk, 855 S.W.2d at 706.

 In Manson, the Supreme Court found an in-court identification constitutionally admissible
based on facts very similar to the present case. Manson, 432 U.S. at 98, 97 S. Ct. at 2243. An
undercover policeman and an informant went to an apartment identified to them as a location where
they could obtain illegal drugs. When Brathwaite opened the door and conducted the drug
transaction over the course of five to seven minutes, the policeman was able to observe his face from
a distance of two feet. Brathwaite's identity was unknown to the officer. After returning to police
headquarters, the officer described the drug dealer to two officers. One of the officers believed he
recognized the accused from the description, obtained a copy of Brathwaite's photograph from the
records division of the Hartford police department, and left it at the undercover policeman's office. 
Two days later, the undercover policeman returned to his office, saw the photograph, and identified
the person in the photograph as the person who sold him the drugs. (2) Commenting on the converging
influences of the five factors enunciated in Neil and the single photo display, the Court stated: 


 [t]hese indicators of the officer's ability to make an accurate identification are hardly outweighed by
the corrupting effect of the challenged identification itself. Although identifications arising from
single-photograph displays may be viewed in general with suspicion, see Simmons v. United States,
390 U.S. at 383, 88 S. Ct. at 970-71, we find in the instant case little pressure on the witness to
acquiesce in the suggestion that such a display entails.



Manson, 432 U.S. at 116, 97 S. Ct. at 2254. The Court found the issue of whether, due to the single
photo display, there was a "substantial likelihood of irreparable misidentification" to be an issue for
the jury to weigh and evaluate. Manson, 432 U.S. 116, 97 S. Ct. 2254. (3) The Supreme Court held
the identification admissible and upheld the conviction.

 In the present case, the informant had ample opportunity to view the dealer during the face
to face drug transaction. The informant met the dealer outside the house at midday. The two stood
face-to-face and shook hands. The informant followed the dealer inside the house and went into the
kitchen with him. After the dealer returned from a bedroom with crack cocaine and set it on the
kitchen table, the two discussed the purchase of crack cocaine and consummated the deal. The
informant had been trained to carefully scrutinize and remember a drug dealer's features for later
identification. Thus, the informant had an opportunity to view the dealer in the full light of the
midday sun and subsequently during the drug transaction. Both of these encounters lasted several
minutes. Because the informant had ample opportunity to view the dealer and his attention was
focused on the dealer during the encounter, the first two considerations listed in Neil are satisfied.

 The third factor, the accuracy of the informant's prior description of the dealer, is weaker in
that he only relayed Appellant's first name to the police officer. The informant had a high level of
certainty of his identification of the dealer when shown Appellant's driver's licence photograph. 
Finally, the length of time between the crime and the identification was extremely short, "just a
matter of minutes" according to the supervising officer. At trial, the informant was emphatic that
the single photo display did not affect his identification, that he was trained to correctly identify
people, and that his memory was not influenced by the photo. 

 The standard of review requires a reviewing court to "consider the five Biggers factors,
which are all issues of historical fact, deferentially in a light favorable to the trial court's ruling. The
factors, viewed in this light should then be weighed de novo against 'the corrupting effect' of the
suggestive pretrial identification procedure." Loserth v. State, 963 S.W.2d 770, 773-74 (Tex. Crim.
App. 1998). The reviewing court must view the historical facts in a light most favorable to the
court's ruling if the trial court does not make express findings of historical facts. Loserth, 963
S.W.2d at 774. The trial court did not make any express findings of historical facts, so we view the
historical facts in a light most favorable to the court's ruling.

 Taken together, under the "totality of the circumstances," we find the trial court did not err
in admitting the in-court identification of Appellant by the informant. Consistent with Neil, the 
testimony of the informant shows that his in-court identification of Appellant was independent of,
and not influenced by, the photograph of Appellant. Therefore, we cannot say that the trial court
erred in admitting the testimony of the informant identifying Appellant as the person who sold him
the cocaine. We overrule Appellant's first issue.


Admission of Extraneous Conduct

 In his second issue, Appellant contends the trial court erred in admitting evidence obtained
in a search of Appellant's home twenty-six hours after the sale of the cocaine pursuant to a search
warrant. Appellant contends the various items seized, including guns, cocaine based drugs, bullets,
Appellant's driver's license, and various papers addressed to or identifying Appellant, were
erroneously admitted in violation of Texas Rule of Evidence 404(b). (4)

 In analyzing the interaction of Texas Rules of Evidence 401, 402, 403, and 404, the trial court
is to conduct a balancing test to determine whether the probative value of an item of evidence "is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations fo undue delay, or needless presentation of cumulative evidence." 
Tex. R. Evid. 403. The trial court, after conducting the balancing test, "must be given wide latitude
to exclude, or particularly in view of the presumption of admissibility of relevant evidence, not to
exclude misconduct evidence as he sees fit. So long as the trial court thus operates within the
boundaries of its discretion, an appellate court should not disturb its decision, whatever it may be." 
Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (opinion on reh'g).

 The Montgomery court, explaining the role of the appellate court in reviewing the trial
court's decision to admit evidence, stated:


 It is true that Rule 401 defines "relevance," but that definition is necessarily a broad one. . . . 
Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a
function of rule and logic. The trial court must rely in large part upon its own observations and
experiences of the world, as exemplary of common observation and experience, and reason from there
in deciding whether proffered evidence has 'any tendency to make the existence of any fact of
consequence to the determination of the action more probable or less probable that it would be without
the evidence.' Rule 401, supra. The determination of relevance, vel non, thus depends upon one
judge's perception of common experience. . . . [A]s long as the trial court's ruling was at least within
the zone of reasonable disagreement, the appellate court will not intercede. . . . The appellate court
should not conduct a de novo review of the record with a view to making a wholly independent
judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially
outweighed by the danger of unfair prejudice. It should reverse the judgment of the trial court "rarely
and only afer a clear abuse of discretion." United States v. Maggitt, 784 F.2d 590, 597 (5th Cir. 1986)



Montgomery, 810 S.W.2d at 391-92.

 At trial, the State contended the items obtained through the search of the room was contextual
or background evidence. (5) We decline to address whether this evidence was admissible under this
theory because we conclude that this evidence was admissible for a different reason. A trial court's
decision with regard to the admissibility of evidence will be sustained if it is correct on any theory
of law applicable to the case. McDuff v. State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997);
Romero v. State, 800 S.W.2d 539, 543 (Tex. 1990).

 Appellant contends that the items seized in the search of the room from which the crack
cocaine was retrieved was not relevant and the trial court erred in admitting this alleged extraneous
evidence. In light of Appellant's defense that he had been misidentified as the person who sold the
drugs to the informant due to the suggestive one-photograph display, the issue of the identity of the
person who sold the informant the cocaine was crucial to the State's case. The evidence found in
the room included Appellant's wallet, driver's license, assorted papers addressed to him or
identifying him, a business card to the car wash to which the informant was first directed on his way
to contact Appellant for the drug deal, additional crack cocaine, and several guns. After Appellant
contended he was not the person that entered this room, retrieved cocaine and sold it to the
informant, evidence affirmatively linking Appellant to the room and its contents was relevant
because it contradicted Appellant's contention that he had been misidentified as the person that sold
the drugs. Chatham v. State, 889 S.W.2d 345, 350 (Tex. App.-Houston [14th Dist.] 1994, no pet.)
(evidence of extraneous offenses may be used to counter a defensive theory even though this purpose
is not set forth in Rule 404(b); see Halliburton v. State, 528 S.W.2d 216, 218 (Tex. Crim. App.
1975). With regard to the guns, it is reasonable to conclude that Appellant kept guns in his bedroom
to protect whatever drugs he possessed. See Hawkins v. State, 871 S.W.2d 539, 541 (Tex. App.-
Fort Worth 1994, no writ). The guns make more probable Appellant's dominion or control over the
drugs. Id. at 541-42. Therefore, the evidence seized as a result of the search warrant was admissible
under Texas Rule of Evidence 404(b). 

 We also conclude the probative value of the evidence was not substantially outweighed by
the danger of unfair prejudice. Tex. R. Evid. 403. Rule 403 "favors admissibility of relevant
evidence, and the presumption is that relevant evidence will be more probative than prejudicial." 
Long v. State, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991). This evidence was relevant to rebut
Appellant's misidentification theory as well as to the issue of control. In light of the significant
probative value of this evidence, we cannot say that its admission unfairly prejudiced Appellant. See
Blakeney v. State, 911 S.W.2d 508, 515 (Tex. App.-Austin 1995, no pet.) (Only evidence that is
unfairly prejudicial must be excluded under Rule 403.). 

 Viewing the issues and the evidence as a whole, we cannot say the trial court abused its
discretion in admitting the items seized as a result of the search warrant. Therefore, we overrule
Appellant's second issue.

 Having found no reversible error, we affirm Appellant's conviction.


 SAM GRIFFITH 

 Justice


Opinion delivered February 6, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.





















(PUBLISH)
1. The recommended practice would be to present the witness with a photographic array including "so far as
practicable . . .a reasonable number of persons similar to any person then suspected whose likeness is included in the
array." Manson, 432 U.S. at 116, 97 S. Ct. at 2254, quoting ALI Model Code of Pre-Arraignment Procedure, section
160.2(2) (1975).
2. The Supreme Court noted that "[a]lthough it plays no part in our analysis, all this assurance as to the
reliability of the identification is hardly undermined by the facts that respondent was arrested in the very apartment
where the sale had taken place, and that he acknowledged his frequent visits to that apartment." Manson, 432 U.S. at
116, 97 S. Ct. at 2254.
3. The Court wrote: "Juries are not so susceptible that they cannot measure intelligently the weight of
identification testimony that has some questionable feature," and held that any defect in the single photograph array
". . .goes to weight and not to substance." Manson, 432 U.S. 116-17, 97 S. Ct. 2254.
4. (b) Other Crimes, Wrongs or Acts.

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in
order to show action in conformity therewith. It may, however, be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused, in a criminal case,
reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such
evidence other than that arising in the same transaction.
5. "Background evidence, once called 'res gestae' of the offence, has come to refer to other offenses indivisibly
connected with the offense charged, and not only general background evidence which is helpful to the jury's
understanding." Mayes v. State, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991).