Marcus JOHNIGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–00–00233–CR.

Court of Appeals of Texas, Tyler.

Feb. 6, 2002.

Marcus Johnigan, Tyler, pro se.

William B. Baade, Tyler, for appellant.

Edward J. Marty, Smith County Crim. Dist. Atty., Tyler, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

SAM GRIFFITH, Justice.

Marcus Johnigan ("Appellant") appeals his conviction for delivery of a controlled substance. A jury returned a verdict of guilty and assessed his punishment at imprisonment for forty years and a $5,000.00 fine. Appellant raises two issues on appeal. We affirm.

## BACKGROUND

A confidential informant, who was working for the Texas Department of Public Safety ("DPS") in the course of a DPS drug investigation, and who had worked for several law enforcement agencies as an informant for more than eleven years, contacted a suspected drug dealer. Through the suspected drug dealer, the confidential informant was taken to a car wash, then to a Tyler house, where he purchased crack cocaine from a man identified as "Marcus." Upon leaving the location of the drug delivery, the DPS officer supervising the informant contacted the Tyler police department, which has a comprehensive, "in house" identification system that lists all persons known to the police and their association with various addresses. The DPS officer asked if anyone known as "Marcus" was associated with the house where the drug sale occurred. An inquiry was entered into the Tyler police system, and the officer was immediately informed that a "Marcus Johnigan" was associated with that address. The officer then obtained Marcus Johnigan's driver's license photograph from the driver's license files, which he showed to the informant within minutes of the drug delivery. The informant unequivocally identified Appellant as the person who sold him the cocaine, stating unequivocally, "That's him." Based on the delivery of cocaine, a search warrant was served at the location of the drug sale. The police seized several guns, crack cocaine, and Appellant's wallet and driver's license from the room in which the dealer retrieved the drugs he sold to the informant.

Appellant filed a pre-trial motion to suppress the informant's in-court identification of him, which the trial court denied.

At trial, the informant identified Appellant as the man who sold him crack cocaine. The jury convicted Appellant of delivery of a controlled substance and Appellant filed a timely notice of appeal.

## SUPPRESSION OF IDENTIFICATION

In his first issue, Appellant contends the trial court erred in not suppressing the informant's in-court identification of him because it derived from an improperly suggestive, single photo lineup consisting only of his driver's license.

■■■ Initially, it should be noted that a single photograph "line up" is improperly suggestive and viewed with suspicion. *Manson v. Brathwaite*, 432 U.S. 98, 109 & 117, 97 S.Ct. 2243, 53 L.Ed.2d 140,[1] 97 S.Ct. 2243, 2250 & 2254, 53 L.Ed.2d 140 (1977); *Delk v. State*, 855 S.W.2d 700, 706 (Tex.Crim.App.1993). A suggestive identification scenario, such as a single photograph line up, is disapproved because the suggestive line up increases the likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972). A two-step analysis is used to determine the admissibility of an in-court identification. First, the photographic display cannot be impermissibly suggestive. Second, based on the totality of the circumstances, the suggestive display cannot give rise to a "substantial likelihood of irreparable misidentification." *Delk*, 855 S.W.2d at 706. However, the United States Supreme Court has stated that a conviction "based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so im-

permissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The core issue is "... whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil*, 409 U.S. at 200, 93 S.Ct. at 382–83.

■ Five factors are considered to evaluate the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *See Neil*, 409 U.S. at 199, 93 S.Ct. at 382; *see also Manson*, 432 U.S. at 114, 97 S.Ct. at 2253.

Although not preferred, single person identification line ups have been held constitutionally admissible. In *Neil*, the United States Supreme Court upheld a conviction where the police, who had shown the victim numerous photographs of possible suspects, apprehended the accused, and, unable to find similar persons with whom to construct a line up, brought only the accused to the victim, who identified him as the rapist. *Neil*, 409 U.S. at 195, 93 S.Ct. at 380.

In *Delk*, the witness, after being informed a person had been apprehended for her husband's murder, asked the sheriff to let her see his photograph. The sheriff handed her only Delk's photograph. She identified the person in the photograph as

---

**1.** The recommended practice would be to present the witness with a photographic array including "so far as practicable ... a reasonable number of persons similar to any person then suspected whose likeness is included in

the array." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254, *quoting* ALI Model Code of Pre–Arraignment Procedure, section 160.2(2) (1975).

the person she had seen driving her husband's car shortly before his body was found. *Delk*, 855 S.W.2d at 706.

In *Manson*, the Supreme Court found an in-court identification constitutionally admissible based on facts very similar to the present case. *Manson*, 432 U.S. at 98, 97 S.Ct. at 2243. An undercover policeman and an informant went to an apartment identified to them as a location where they could obtain illegal drugs. When Brathwaite opened the door and conducted the drug transaction over the course of five to seven minutes, the policeman was able to observe his face from a distance of two feet. Brathwaite's identity was unknown to the officer. After returning to police headquarters, the officer described the drug dealer to two officers. One of the officers believed he recognized the accused from the description, obtained a copy of Brathwaite's photograph from the records division of the Hartford police department, and left it at the undercover policeman's office. Two days later, the undercover policeman returned to his office, saw the photograph, and identified the person in the photograph as the person who sold him the drugs.[2] Commenting on the converging influences of the five factors enunciated in *Neil* and the single photo display, the Court stated:

> [t]hese indicators of the officer's ability to make an accurate identification are hardly outweighed by the corrupting effect of the challenged identification itself. Although identifications arising from single-photograph displays may be viewed in general with suspicion, *see Simmons v. United States*, 390 U.S. at 383, 88 S.Ct. at 970–71, we find in the instant case little pressure on the witness to acquiesce in the suggestion that such a display entails.

*Manson*, 432 U.S. at 116, 97 S.Ct. at 2254. The Court found the issue of whether, due to the single photo display, there was a "substantial likelihood of irreparable misidentification" to be an issue for the jury to weigh and evaluate. *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254.[3] The Supreme Court held the identification admissible and upheld the conviction.

■ In the present case, the informant had ample opportunity to view the dealer during the face to face drug transaction. The informant met the dealer outside the house at midday. The two stood face-to-face and shook hands. The informant followed the dealer inside the house and went into the kitchen with him. After the dealer returned from a bedroom with crack cocaine and set it on the kitchen table, the two discussed the purchase of crack cocaine and consummated the deal. The informant had been trained to carefully scrutinize and remember a drug dealer's features for later identification. Thus, the informant had an opportunity to view the dealer in the full light of the midday sun and subsequently during the drug transaction. Both of these encounters lasted several minutes. Because the informant had ample opportunity to view the dealer and his attention was focused on the dealer

---

2. The Supreme Court noted that "[a]lthough it plays no part in our analysis, all this assurance as to the reliability of the identification is hardly undermined by the facts that respondent was arrested in the very apartment where the sale had taken place, and that he acknowledged his frequent visits to that apartment." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254.

3. The Court wrote: "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature," and held that any defect in the single photograph array "... goes to weight and not to substance." *Manson*, 432 U.S. at 116–17, 97 S.Ct. at 2254.

during the encounter, the first two considerations listed in *Neil* are satisfied.

The third factor, the accuracy of the informant's prior description of the dealer, is weaker in that he only relayed Appellant's first name to the police officer. The informant had a high level of certainty of his identification of the dealer when shown Appellant's driver's licence photograph. Finally, the length of time between the crime and the identification was extremely short, "just a matter of minutes" according to the supervising officer. At trial, the informant was emphatic that the single photo display did not affect his identification, that he was trained to correctly identify people, and that his memory was not influenced by the photo.

■■■ The standard of review requires a reviewing court to "consider the five *Biggers* factors, which are all issues of historical fact, deferentially in a light favorable to the trial court's ruling. The factors, viewed in this light should then be weighed *de novo* against 'the corrupting effect' of the suggestive pretrial identification procedure." *Loserth v. State*, 963 S.W.2d 770, 773–74 (Tex.Crim.App.1998). The reviewing court must view the historical facts in a light most favorable to the court's ruling if the trial court does not make express findings of historical facts. *Loserth*, 963 S.W.2d at 774. The trial court did not make any express findings of historical facts, so we view the historical facts in a light most favorable to the court's ruling.

Taken together, under the "totality of the circumstances," we find the trial court did not err in admitting the in-court identification of Appellant by the informant. Consistent with *Neil*, the testimony of the informant shows that his in-court identification of Appellant was independent of, and not influenced by, the photograph of Appellant. Therefore, we cannot say that the trial court erred in admitting the testimony of the informant identifying Appellant as the person who sold him the cocaine. We overrule Appellant's first issue.

## ADMISSION OF EXTRANEOUS CONDUCT

In his second issue, Appellant contends the trial court erred in admitting evidence obtained in a search of Appellant's home twenty-six hours after the sale of the cocaine pursuant to a search warrant. Appellant contends the various items seized, including guns, cocaine based drugs, bullets, Appellant's driver's license, and various papers addressed to or identifying Appellant, were erroneously admitted in violation of Texas Rule of Evidence 404(b).[4]

■■■ In analyzing the interaction of Texas Rules of Evidence 401, 402, 403, and 404, the trial court is to conduct a balancing test to determine whether the probative value of an item of evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. The trial court, after conducting the balancing test, "must be given wide latitude to exclude, or particularly in view of the presumption of admissibility of

4.  (b) Other Crimes, Wrongs or Acts.
    Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused, in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

relevant evidence, not to exclude misconduct evidence as he sees fit. So long as the trial court thus operates within the boundaries of its discretion, an appellate court should not disturb its decision, whatever it may be." *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim.App.1990) (opinion on reh'g).

The *Montgomery* court, explaining the role of the appellate court in reviewing the trial court's decision to admit evidence, stated:

> It is true that Rule 401 defines "relevance," but that definition is necessarily a broad one.... Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a function of rule and logic. The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has 'any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable that it would be without the evidence.' Rule 401, supra. The determination of relevance, *vel non*, thus depends upon one judge's perception of common experience.... [A]s long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede.... The appellate court should not conduct a *de novo* review of the record with. a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. It should reverse the judgment

of the trial court "rarely and only after a clear abuse of discretion." *United States v. Maggitt*, 784 F.2d 590, 597 (5th Cir.1986)

*Montgomery*, 810 S.W.2d at 391–92.

■ At trial, the State contended the items obtained through the search of the room was contextual or background evidence.[5] We decline to address whether this evidence was admissible under this theory because we conclude that this evidence was admissible for a different reason. A trial court's decision with regard to the admissibility of evidence will be sustained if it is correct on any theory of law applicable to the case. *McDuff v. State*, 939 S.W.2d 607, 619 (Tex.Crim.App. 1997); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

■ Appellant contends that the items seized in the search of the room from which the crack cocaine was retrieved was not relevant and the trial court erred in admitting this alleged extraneous evidence. In light of Appellant's defense that he had been misidentified as the person who sold the drugs to the informant due to the suggestive one-photograph display, the issue of the identity of the person who sold the informant the cocaine was crucial to the State's case. The evidence found in the room included Appellant's wallet, driver's license, assorted papers addressed to him or identifying him, a business card to the car wash to which the informant was first directed on his way to contact Appellant for the drug deal, additional crack cocaine, and several guns. After Appellant contended he was not the person that entered this room, retrieved cocaine and sold it to the informant, evidence affirmatively linking Appellant to

---

5. "Background evidence, once called 'res gestae' of the offence, has come to refer to other offenses indivisibly connected with the offense charged, and not only general background evidence which is helpful to the jury's understanding." *Mayes v. State*, 816 S.W.2d 79, 86 (Tex.Crim.App.1991).

the room and its contents was relevant because it contradicted Appellant's contention that he had been misidentified as the person that sold the drugs. *Chatham v. State,* 889 S.W.2d 345, 350 (Tex.App.-Houston [14th Dist.] 1994, no pet.) (evidence of extraneous offenses may be used to counter a defensive theory even though this purpose is not set forth in Rule 404(b)); *see Halliburton v. State,* 528 S.W.2d 216, 218 (Tex.Crim.App.1975). With regard to the guns, it is reasonable to conclude that Appellant kept guns in his bedroom to protect whatever drugs he possessed. *See Hawkins v. State,* 871 S.W.2d 539, 541 (Tex.App.-Fort Worth 1994, no writ). The guns make more probable Appellant's dominion or control over the drugs. *Id.* at 541–42. Therefore, the evidence seized as a result of the search warrant was admissible under Texas Rule of Evidence 404(b).

█ We also conclude the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. TEX.R. EVID. 403. Rule 403 "favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Long v. State,* 823 S.W.2d 259, 271 (Tex.Crim. App.1991). This evidence was relevant to rebut Appellant's misidentification theory as well as to the issue of control. In light of the significant probative value of this evidence, we cannot say that its admission unfairly prejudiced Appellant. *See Blakeney v. State,* 911 S.W.2d 508, 515 (Tex. App.-Austin 1995, no pet.) (Only evidence that is unfairly prejudicial must be excluded under Rule 403.).

Viewing the issues and the evidence as a whole, we cannot say the trial court abused its discretion in admitting the items seized as a result of the search warrant. Therefore, we overrule Appellant's second issue.

Having found no reversible error, we *affirm* Appellant's conviction.