Opinion issued May 22, 2003






 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00394-CR
____________
 
OSCAR QUINTANILLA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 877480
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Oscar Quintanilla, guilty of possession with intent to
deliver cocaine weighing at least 400 grams and assessed punishment at confinement
for 20 years. In two points of error, appellant contends that the trial court erred in
denying his motion to suppress evidence and that the evidence is legally and factually
insufficient to support his conviction. We affirm.
Facts
          On May 15, 2001, Houston Police Officer Mark Boyle supervised a narcotics
investigation with several uniformed and undercover police officers. Boyle testified
that he received information from an informant that a suspected drug dealer, Jose
Diaz, wanted to sell a large amount of cocaine that day. The officers set up
surveillance on Diaz and followed him to the parking lot of a restaurant in the
Montrose area of Houston. Boyle watched Diaz park his car behind the restaurant,
get out of his car, and get into the informant’s car. After the two men had engaged
in conversation for 15 minutes, Boyle saw Diaz retrieve a blue bag from his car and
carry it to the informant’s car.
          The informant testified that Diaz showed him four kilograms of cocaine
contained in the blue bag, but that Diaz told him that “you don’t want to buy this stuff
. . . it’s not good.” Diaz then told the informant, “I can take you somewhere and get
good quality [cocaine] sealed up.” Boyle saw Diaz place the blue bag back inside his
car. Diaz and the informant then left their cars and walked to the front of the
restaurant. At this point, Diaz and the informant walked to and entered a residence
directly across the street from the restaurant. 
          The informant further testified that, after appellant opened the front door of the
residence, the men gathered in the kitchen. Appellant showed the informant a sample
of cocaine in a plastic bag. After the informant tried some of the cocaine, appellant
then showed “a sealed kilo” of cocaine to the informant. After he was shown the
“sealed kilo,” the informant and Diaz left the residence, and the informant called
Officer Boyle and told him that “everything is okay and they could move ahead or
forward with their plan.” 
          Officer Boyle, based on his surveillance and the informant’s telephone call,
“determined that narcotics negotiations had been completed and decided to detain all
suspects.” Appellant was detained at a nearby tire shop, and officers brought him
back to his residence. The officers entered the house to perform a protective sweep,
and appellant then gave his written consent to search his residence. The officers
found a kilogram of cocaine in a plastic bag in appellant’s kitchen, and they found
two kilograms of sealed cocaine in a safe in appellant’s bedroom closet. In addition,
the officers found a loaded pistol in a kitchen drawer and two pistols in appellant’s
bedroom. 
          Appellant testified that he allowed Diaz to keep “stuff” at appellant’s residence
and that, in return, Diaz paid appellant’s rent and bills. Appellant stated that Diaz
called him that day and said “they were going to pick up some stuff.” Appellant
“thought he was going to pick up some money that they had there.” Appellant
testified that a friend of Diaz, Tonio, then came to his residence and dropped off the
“sealed kilos” of cocaine. Appellant claimed that the first time he had seen the
narcotics was when Diaz called him and asked him to take a kilogram of cocaine to
Diaz in the restaurant. Appellant told Diaz “no.” When Diaz then asked appellant
to bring “a piece” of cocaine to the restaurant, appellant again refused. Appellant
stated that the cocaine was not his and he was not involved in the narcotics
negotiations. He further stated that when the informant asked him the price of the
cocaine, appellant responded, “[T]hat’s not my business.” 
Consent to Search
          In his first point of error, appellant contends that the trial court erred in denying
his motion to suppress evidence obtained from his residence because he did not freely
and voluntarily give his consent to the search his residence.
          Under the Fourth


 and Fourteenth


 Amendments to the Unites States
Constitution, a search conducted without a warrant issued upon probable cause is per
se unreasonable limited to a few well-delineated exceptions. Schneckloth v.
Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973). A search pursuant to
voluntary consent is an exception to the requirement that a search be based upon a
warrant supported by probable cause. Reasor v. State, 12 S.W.3d 813, 817 (Tex.
Crim. App. 2000). For consent to be valid, however, it must be voluntary. Id. at
817-18. 
          At a suppression hearing, the trial court is the sole and exclusive trier of fact
and judge of the credibility of the witnesses and their testimony. Maxwell v. State,
73 S.W.3d 278, 281 (Tex. Crim. App. 2002). The validity of an alleged consent to
search is a question of fact to be determined from the totality of the circumstances. 
Id. The federal constitution requires the State to prove the voluntariness of the
consent by a preponderance of the evidence, while the Texas Constitution requires
the State to show by clear and convincing evidence that the consent was freely and
voluntarily given. Id. The appropriate standard for reviewing a trial court’s ruling
on a motion to suppress is bifurcated, giving almost total deference to a trial court’s
determination of historical facts and reviewing de novo the court’s application of the
law. Id.; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
          Among the factors to be considered in determining voluntariness are whether
the consenting person is in custody, whether he or she was arrested at gunpoint, and
whether the person was informed that he or she did not have to consent. Carmouche
v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Other factors include the youth
of the accused, the education of the accused, the intelligence of the accused, the
constitutional advice given to the accused, the length of the detention, the
repetitiveness of the questioning, and the use of physical punishment. Reasor, 12
S.W.3d at 818.
          Appellant contends that his consent to search his residence was involuntary
because (1) he was under arrest; (2) he was confronted by two or more police officers;
(3) the police displayed their weapons; (4) he was in handcuffs; (5) the police had
already taken possession of his house key and entered his residence; (6) the police
made repeated requests for a consent to search; and (7) the protective sweep of his
residence was illegal and tainted his consent. 
          Appellant testified that, while he was at the tire shop, “a guy dressed in regular
clothes jumped out with a gun drawn . . . I saw the gun in my face, and then he just
threw me to the ground and handcuffed me.” After appellant was taken back to his
residence, he saw many officers running around the sides of his residence. Appellant
stated that officers pushed on his front door “like if they were going to break it,” and
an officer then came and took keys out of his pocket. Appellant further stated that
Officer Walter Redman asked him for consent to search his residence and that
Redman told him that he “had nothing to worry about because they knew it wasn’t
[appellant].” Appellant claimed that Redman also told him that if appellant did not
sign the written consent form, “[Redman] would have me sit in the police car until he
went to get a search warrant and came back.” Appellant also claimed that officers
were in his house for 35 minutes before he signed the written consent to search his
residence.
          However, on cross-examination, appellant admitted that he initially lied when
he told the officers that he did not live at the residence, and appellant admitted that
he initially denied that his signature was on the consent form when, in fact, it was his
own.
          Moreover, Officer Redman testified that appellant was not under arrest and,
when Redman approached appellant, Redman did not have his weapon drawn. 
Redman testified that he did not threaten or coerce appellant in any fashion, and he
initially informed appellant of his legal rights, including appellant’s right to refuse
to consent to search. Redman stated that appellant gave him oral consent to search
his residence, but Redman wanted to “back up” the oral consent with a “written form
of consensual search.” Redman also stated that appellant appeared to be literate. 
When Redman presented appellant with a written consent-to-search form, appellant
read the form and stated that he understood his rights. Redman further testified that,
after 10 to 15 minutes, appellant voluntarily signed the consent form and Officer Rick
Ashwood witnessed appellant signing the form. Additionally, Redman stated that
appellant was not arrested in order to gain consent, and he denied threatening
appellant with a search warrant in order to gain his consent. 
          Here, the record supports a finding by clear and convincing evidence that the
consent to search was freely and voluntarily given. The record indicates that although
appellant was informed of his legal rights and he read the consent form, which stated
that he had “a right to refuse to consent to the search,” appellant voluntarily chose to
waive his rights. Although the officers had already entered appellant’s residence to
perform a protective sweep, the record does not indicate that the officers in fact
searched the residence prior to appellant signing the consent form. Appellant gave
contrary testimony, but the trial court, as the fact finder, was free to disbelieve
appellant. Martinez v. State, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). Giving
deference to the trial court’s resolution of factual conflicts, we conclude there was
clear and convincing evidence to sustain the trial court’s ruling that appellant
voluntarily consented to the search of his residence.
          Accordingly, we hold that the trial court did not abuse its discretion in denying
appellant’s motion to suppress evidence.
          We overrule appellant’s first point of error.
Sufficiency of the Evidence
          In appellant’s second point of error, he contends that the evidence was legally
and factually insufficient to prove that he intentionally and knowingly possessed the
cocaine found in his residence.
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. Id.
          The factual sufficiency of the evidence is reviewed by examining all of the
evidence neutrally and asking whether the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence
in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).
          To establish the unlawful possession with the intent to deliver a controlled
substance, the State must show (1) that a defendant exercised care, custody, control,
or management over the controlled substance; (2) that he knew he possessed a
controlled substance; and (3) that he had the intent to deliver the controlled substance.
Tex. Health & Safety Code Ann. §§ 481.002(38), 481.112 (Vernon Supp. 2003); 
Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The State need not
show that the defendant exercised exclusive control over the controlled substance, but
when the defendant does not have exclusive control, the State must show additional
affirmative links between the defendant and the contraband. Cedano v. State, 24
S.W.3d 406, 411 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The affirmative
links must raise a reasonable inference that the accused knew of and controlled the
contraband. Dickerson v. State, 866 S.W.2d 696, 700 (Tex. App.—Houston [1st
Dist.] 1993, pet. ref’d).
          Factors that have been considered to establish affirmative links include (1) the
defendant’s presence when the search was executed; (2) narcotics in plain view; (3)
the defendant’s proximity to and accessibility of the narcotics; (4) the defendant
under the influence of narcotics when arrested; (5) the defendant’s possession of
other narcotics when arrested; (6) the defendant’s incriminating statements; (7) the
defendant’s attempted flight; (8) the defendant’s furtive gestures; (9) the presence of
odor of the narcotics; (10) the presence of other narcotics or narcotics paraphernalia; 
(11) the defendant’s ownership or right to possession of the place where narcotics
found; and (12) narcotics found in an enclosed place. Williams v. State, 859 S.W.2d
99, 101 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d). Despite this list of factors,
there is no set formula necessitating a finding of an affirmative link, but rather,
affirmative links are established by the totality of the circumstances. Sosa v. State,
845 S.W.2d 479, 483 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d).
          Appellant argues that there are insufficient affirmative links to connect him to
the cocaine found inside his residence. We disagree. Here, there are many
affirmative links between appellant and the cocaine seized from inside his residence. 
Appellant testified that he lived at the residence and that Diaz paid his rent and bills
because appellant agreed to keep “some stuff” at the residence. Appellant further
testified that Diaz called and twice asked him to bring cocaine to the restaurant,
raising an inference that appellant knew there was cocaine at the residence and that
appellant had control over the cocaine.
          The informant testified that appellant showed him both cocaine in a plastic bag
and a kilogram of “sealed cocaine.” The record reveals that a plastic bag of cocaine
was found in appellant’s kitchen and two kilograms of “sealed cocaine” were found
inside a safe located in appellant’s bedroom closet. The record also reveals that
appellant possessed the only key to the front door of the residence and possessed a
key to the safe, indicating appellant had complete control over the residence and over
a location where cocaine was stored within the residence. The record further shows
that police found two handguns inside a dresser located in appellant’s bedroom and
a loaded handgun inside a kitchen drawer with the plastic bag of cocaine. See
Johnigan v. State, 69 S.W.3d 749, 755-56 (Tex. App.—Tyler 2002, pet. ref’d)
(finding possession of gun relevant to show control and dominion over cocaine);
Levario v. State, 964 S.W.2d 290, 296-97 (Tex. App.—El Paso 1997, no pet.)
(finding evidence of handgun admissible to show defendant’s willingness to protect
narcotics). Moreover, recognizable drug paraphernalia, a gram scale commonly used
to measure contraband, was in plain view on the kitchen counter, further linking
appellant to the cocaine. See Harmond v. State, 960 S.W.2d 404, 406 (Tex.
App.—Houston [1st Dist.] 1998, no pet.).
          A rational fact finder could have found affirmative links between appellant and
the cocaine found inside his residence. Thus, we hold under the totality of the
circumstances that the evidence is legally sufficient to support his conviction.
          In regard to factual sufficiency, appellant argues that he was unaware that
cocaine was inside his house until Diaz called him and that Diaz’s friend, Tonio,
brought the cocaine inside his residence. Appellant contends that he initially believed
that Diaz was keeping only money in the safe inside his closet and that he told the
informant that matters concerning the cocaine were “not my business.” 
          The jury, as the trier of fact, is the sole judge of the credibility of witnesses and
the weight to be given to testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986). The jury may believe or disbelieve all or any part of a witness’s
testimony. Id. To the extent that any of the evidence in this case may be viewed as
contradictory, we note that a decision is not manifestly unjust merely because the fact
finder resolved conflicting views of the evidence in favor of the State. Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997). Therefore, we hold that appellant has
not shown that the verdict is so weak as to be manifestly unjust or that the facts are
so contrary to the great weight and preponderance of the evidence as to be clearly
wrong.
          We overrule appellant’s second point of error.

Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Hedges, Jennings, and Alcala.
 
Do not publish. Tex. R. App. P. 47.2(b).