NO. 07-02-0178-CR
NO. 07-02-0179-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 12, 2003

_____


KEITH O'BRYANT MOSLEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 9TH DISTRICT COURT OF WALLER COUNTY;

NO. 10712 & 10713; HONORABLE WOODY R. DENSEN, JUDGE

_____

Before QUINN and REAVIS and CAMPBELL, JJ.


**MEMORANDUM OPINION**


A jury convicted appellant Keith O'Bryant Mosley of two Delivery of a Controlled

Substance offenses following his pleas of not guilty, and the trial court assessed as

punishment concurrent twenty year sentences and $10,000 fines. In five issues appellant

complains: (1) the State suppressed exculpatory evidence; (2) the complaining witnesses' in-court identification of him was tainted by an impermissibly suggestive pretrial identification procedure; (3) he was denied the right to confront and cross-examine witnesses; (4) the trial court erred in not conducting a hearing to determine the admissibility of scientific evidence; and (5) the evidence is legally insufficient to support the conviction. The State failed to file a brief responding to appellant's claims. Accordingly, we have treated that dereliction as a confession of error and conducted an independent examination of the merits of appellant's claims. Siverand v. State, 89 S.W.3d 216, 220 (Tex.App.--Corpus Christi 2002, no pet.). Based upon the following rationale, we reform the judgment of the trial court and, as reformed, affirm.

On October 26, 1999, undercover narcotics officers Lisa Gartman and Steve Duong each purchased a substance alleged to be dihydrocodeinone[1] from a man who had gold teeth and who was known to them as Bean Papa. In an effort to maintain their covers, the officers did not immediately arrest Bean Papa. Instead, Gartman and Duong transported the substances to the Department of Public Safety's (DPS) Crime Lab for testing, then began an investigation into Bean Papa's true identity. After discovering that Bean Papa's given name was Keith O'Bryant Mosley, the officers obtained a driver's license photograph of appellant from DPS. Upon viewing the photo, Gartman and Duong confirmed appellant

---

[1]The controlled substance at issue in this case is designated by the Health and Safety Code as dihydrocodeinone. Tex. Health & Safety Code. Ann. § 481.104(a)(4)(Vernon 2003). From the record, we discern the drug is often denominated dihydrocodeine or, simply, codeine.

was the individual from whom they purchased codeine on October 26, 1999. In June of 2001, the Waller County grand jury returned two sealed indictments against appellant for Delivery of a Controlled Substance. Appellant was ultimately arrested on August 6, 2001.

The two cases were consolidated in a single trial in February of 2002. Gartman and Duong testified they met appellant for the first time on the day of the offense. The officers explained they were introduced to appellant by an individual named Bailey, with whom they had been acquainted for approximately three weeks. On previous occasions, Gartman and Duong had purchased marihuana from Bailey but expressed an interest on October 26, 1999, in obtaining "liquid" or "syrup," street names for codeine. After Bailey introduced Gartman and Duong to him, the officers each purchased a quantity of "liquid" from appellant. The chemist who tested the substances agreed with the prosecutor's assertion that each was "a mixture, compound, material, or preparation that contain[ed] limited quantities of not more than 300 milligrams of dihydrocodeinone per 100 milliliters per dosage unit with one or more narcotic units in recognized therapeutic amounts." According to the chemist, one of the controlled substances weighed 58.18 grams, including adulterants and dilutants, while the other weighed 107.14 grams.

Appellant's sister Dominique Mosley testified appellant previously had only one gold tooth, but that she accompanied him when the "[o]ne was taken out, and the grill put on." Mosley further advised, "I know they call it a gold grill . . . the teeth are across the front

3

. . . I'm thinking it's four [teeth]." Finally, Mosley acknowledged her brother went by the nickname Bean Papa.

Appellant was present during a portion of the court-tried punishment case, but absconded about half-way through the trial. Appellant was not present when the trial court sentenced him on February 14, 2002. Recognizing the illegality of a sentence pronounced against a criminal defendant *in abstentia*, the trial court conducted another sentencing hearing on June 20, 2002, at which appellant appeared in person and through his attorney.[2] The judgment in each case reflects the "Date Sentence Imposed" as February 14, 2002; however, the correct sentencing date is June 20, 2002.

Neither the State nor appellant has addressed the erroneous sentencing date reflected in the judgment. Indeed, the State has not so much as favored this Court with a letter waiving its opportunity to file a brief. Our authority to reform incorrect judgments, however, is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court. Asberry v. State, 813, S.W.2d 526, 529-30 (Tex.App.–Dallas, 1991, pet. ref'd). Rather, an appellate court may act *sua sponte* and may have the duty to do so. *Id.* at 530. We, therefore, reform the judgments

---

[2]The original sentences were unauthorized by law and, thus, void. Banks v. State, 29 S.W.3d 642, 645 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd).

4

in cause numbers 10712 and 10713 to reflect the correct sentencing date of June 20, 2002.[3]

By appellant's first issue, he contends the State suppressed exculpatory evidence. Specifically, appellant complains the State "actively presented a false picture of the facts by failing to correct its own testimony. Additionally, appellant suggests the State failed to disclose a number of pieces of evidence which he characterizes as *Brady*[4] material. With each of appellant's contentions, we disagree.

With no reference to the record, appellant contends "[t]he DPS chemist repeatedly stated that the dihydrocodeinone was of a certain chemical compound, when, in fact, finally, on cross-examination admitted that he had not performed that test on the dihydrocodeinone in either instance." Appellant suggests the State was aware that the chemist had not performed "the test" but continued to present his testimony nonetheless. According to appellant, the chemist's testimony constituted the presentation of false testimony in violation of Granger v. State, 683 S.W.2d 387 (Tex.Cr.App. 1984). Apart from failing to make record references or present a cogent argument, appellant's assertion is in stark contrast to the record before us. The chemist averred he performed two tests to obtain "the exclusive confirmation of the sample[s]." His testimony regarding the

---

[3]It is the June 20th sentence from which appellant appeals. As a result, appellant's premature March 15th notice of appeal relates forward to that judgment. *See* Tex. R. App. P. 27.1(b).

[4]*See* Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

composition of the substances he tested tracks both the indictment and the language of the statute detailing the offense. *See* Tex. Health & Safety Code Ann. §§ 481.104(a)(4), 481.114(c).[5]

Appellant also claims, without support in the record, that the State presented false testimony when "it continued to ask Gartman about the 'Defendant from which she had bought' the drugs" when it was Bailey who actually delivered the controlled substance to her. As we perceive it, appellant objects to the State's use of the law of parties. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Tex. Pen. Code Ann. § 7.01 (Vernon 2003). It is well established that the law of parties need not be pled in the indictment. Marable v. State, 85 S.W.3d 287 (Tex.Cr.App. 2002). Notwithstanding, from the outset it was clear that the State's theory of its case against appellant for selling codeine to Gartman was based upon the law of parties, and the trial court included in its charges to the jury application paragraphs on the law of parties. The record is replete with evidence that appellant was both present during the offense and encouraged the commission of the offense by both words and agreements. Burdine v. State, 719 S.W.2d 309, 315 (Tex.Cr.App. 1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 979 (1987). We, therefore, cannot agree with appellant that the State actively presented a false picture of the facts.

---

[5]Although we cite to the current statute, it is substantively the same as that in effect at the time of the offense.

Under his first issue, appellant also contends the State failed to disclose: (1) Duong's and Gartman's use of appellant's driver's license photo to identify him; and (2) that "FNU LNU[6] was seen on October 29, 1999, three days after the incident for which he was on trial, in a car registered to Richard Gage." According to appellant, not only did the State have a duty to reveal that information pursuant to *Brady*, but also the Discovery Order entered by the court required such disclosure. We agree the State has an affirmative duty under the Due Process Clause to disclose exculpatory or impeachment evidence that is material to guilt or punishment. *See generally* United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also* Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-197, 10 L.Ed.2d 215, 218 (1963); State v. DeLeon, 971 S.W.2d 701, 705 (Tex.App.–Amarillo 1998, pet. ref'd). When the evidence is disclosed during trial, however, the materiality question turns on whether the defendant was prejudiced by the delayed disclosure. Williams v. State, 995 S.W.2d 754, 761 (Tex.App.–San Antonio 1999, no pet.). Furthermore, when previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. *Id*. The failure to request one waives any *Brady* violation, as well as any violation of a discovery order. *Id*. Assuming *arguendo* the challenged evidence was, in fact, *Brady* material, at no time after the State disclosed it at trial did appellant request a continuance; therefore, any

---

[6]The initials stand for "First Name Unknown, Last Name Unknown." Duong and Gartman used that moniker in their case reports to identify the individual from whom they purchased codeine before they knew his true name.

7

*Brady* violation is waived.  Gutierrez v. State, 85 S.W.3d 446, 452 (Tex.App.–Austin 2002, no pet.).  Appellant's first issue is overruled.

In his second issue, appellant complains his Due Process rights were violated by an impermissibly suggestive pretrial identification procedure.  As we perceive his argument, because Duong and Gartman utilized appellant's driver's license photo to confirm he was the person from whom they purchased codeine, their in-court identification of him was tainted and, thus, inadmissible.  We disagree.

In determining the admissibility of an in-court identification procedure, we employ a two-step inquiry: (1) whether the out-of-court identification procedure was impermissibly suggestive; and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification.  *See* Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); *see also* Madden v. State, 799 S.W.2d 683, 695 (Tex.Cr.App. 1990), *cert denied*, 499 U.S. 954, 111 S.Ct.1432, 113 L.Ed. 2d 483 (1991).  An analysis under these steps requires an examination of the totality of the circumstances surrounding the particular case and a determination of the reliability of the identification.  *See* Webb v. State, 760 S.W.2d 263, 269 (Tex.Cr.App. 1988), *cert denied*, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989); *see also* Harvey v. State, 3 S.W.3d 170, 174 (Tex.App.–Houston [14th Dist.] 1999, pet. ref'd).

A single photograph line up is improperly suggestive and viewed with suspicion. Johnigan v. State, 69 S.W.3d 749, 752 (Tex.App–Tyler 2002, pet. ref'd) (*citing* Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155 (1977)). A suggestive identification scenario, such as a single photograph line up, is disapproved because the suggestive line up increases the likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972). However, a conviction based upon eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384.

We consider the following five factors in evaluating the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *See Biggers*, 409 U.S. at 199-200. The standard of review requires us to consider the five *Biggers* factors, which are all issues of historical fact, deferentially in a light favorable to the trial court's ruling. *Johnigan*, 69 S.W.3d at 754. The factors, viewed in this light, should then be weighed *de novo* against the corrupting effect of the suggestive pretrial

9

identification procedure.  Loserth v. State, 963 S.W.2d 770, 773-74 (Tex.Cr.App. 1998).

Duong and Gartman had ample opportunity to view appellant during their face to face transactions.  Indeed, Gartman conversed with appellant about the potency of the drugs she was purchasing as well as the reasoning behind the purchase price.  Moreover, Gartman testified she had been trained to carefully scrutinize and remember individuals' features for later identification.  Duong and Gartman each identified appellant's gold teeth as his distinguishing physical feature.  And while the officers were not aware of his real name, they were certain that the person from whom they purchased codeine on the day of the offense went by the nickname Bean Papa.  Duong and Gartman were also certain that their pretrial and in-court identification of appellant as Bean Papa was accurate.  Duong averred he "positively I.D.[ed]" the person from whom he purchased codeine from the photo he viewed after the offense, and was "absolutely" sure that person was the same person he identified at trial.  Finally, while over two years had passed between the offense and the date of trial, the officers expressed no concern over their ability to accurately identify the person from whom they purchased codeine. Considering the totality of the circumstances, we find the trial court did not err in admitting the in-court identification of appellant by Gartman and Duong.  Appellant's second issue is overruled.

In issue three, appellant contends he was denied the right to confront and cross-examine the State's witnesses.  He claims he was denied his right under Rule 612 of the

10

Rules of Evidence to inspect and cross-examine Duong and Gartman about the writings they used to refresh their memories prior to and during trial. We disagree.

During appellant's cross examination of Duong, the following exchange occurred:

| | |
|---|---|
| Duong: | Ma'am, I could submit *my* offense report and base on my testimony. *That's my support for the – what I have just told you.* |
| Defense: | Have you reviewed that offense report lately? |
| Duong: | Yes. |
| Defense: | May I review it? |
| Duong: | Yes, ma'am. |
| State: | Your Honor, I have a copy for [the defense]. |
| Defense: | Judge, if you don't mind, I'd like to look at the one he reviewed. |
| Court: | Go ahead. I don't know how long it is, but go ahead and take a look at it. |
| State: | I'll keep my copy |
| Court: | You want his copy rather than her copy. Are they one and the same? Well, check and see if they are one and the same, so that you can look at [the State's]. I think that's the way to do it if they are the same report. |
| Defense: | Judge, she's removing the part of the offense report he reviewed. |
| Court: | Then look at his report. That's fine |
| State: | That's fine. |

(Emphasis added). Following the preceding exchange, it appears appellant's attorney was allowed to review the report Duong prepared and to cross examine him about its contents.

Later in the proceedings, defense counsel explained, outside the presence of the jury:

> . . . During the testimony, when I asked to see Officer Duong's offense report, I asked to the see the full report that he reviewed. What was attached to the report he wrote – was attached a report that the other officer wrote. He reviewed that whole document before he testified; yet, I was not allowed to cross-examine him as to what he learned from the other document that he testified to. . . .

Defense counsel then requested the court "to put that offense report in the hands of Mr. Duong under seal for an appellate review." The court inquired of the State, "it's my understanding . . . when Officer Duong testified he was able to look at his report that he made; and you didn't hold anything back regarding his report, did you?" After the State responded in the negative, the court denied the request.

A similar exchange took place when Gartman testified:

| Defense: | I noticed that while you were testifying when you were asked about the address and a couple of other questions, that you looked at something in your hand. |
|---|---|
| Gartman: | Yes, I did. |
| Defense: | What is that you looked at? |
| Gartman: | The report. *My* report. |
| Defense: | Also known as an offense report? |
| Gartman: | Correct. |
| Defense: | May I have a few minutes? |

12

| | |
|---|---|
| Court: | [State], you will give [the defense attorney] a copy of the report? |
| State: | I will give her a copy. |
| Defense: | Judge, may I at least -- |
| State: | I don't know if she has the other officer's report or not. |
| Gartman: | I do. |
| Court: | Just give her your report. |
| Defense: | May I look and see if there is any notes made on the report, Judge? |
| Court: | Well, you can look at her report, yes. |
| State: | For the record, Your Honor, I'm tendering [the defense attorney] a copy of the offense report. |
| Court: | Okay. The record will so reflect. |

(Emphasis added).

Rule 612 is an "entitlement rule." Johnson v. State, 846 S.W.2d 373, 376 (Tex.App.–Houston [1st Dist.] 1992), *rev'd on other grounds*, 853 S.W.2d 574 (1993) (referring to former Rule 611, now codified as Rule 612). If a witness uses a writing to refresh his memory while testifying, the opposing party is entitled: (1) to have it produced at the hearing or trial; (2) to view it; (3) to cross-examine on it; and, (4) while the party calling the witness may not introduce the writing, to have it or relevant portions of it introduced as evidence. Tex. R. Evid. 612; Powell v. State, 5 S.W.3d 369, 380 (Tex.App.–Texarkana, pet ref'd.), *cert denied*, 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000) (referring to former Rule 611, now codified as Rule 612). The purpose of

allowing an adverse party to inspect documents used by a witness to refresh memory under the rules of evidence is impeachment. *Powell*, 5 S.W.3d at 381-82.

On the record before us, there is nothing to establish Duong and Gartman reviewed one another's reports before testifying at trial. Rather, the record, as manifested in the excerpts recited above, is brimming with evidence that neither officer reviewed anything other than his or her report of the events of October 26, 1999. As a result, appellant has failed to demonstrate even a threshold showing that Duong used Gartman's report to refresh his memory before testifying, and vice versa. Appellant was not, therefore, entitled during his cross-examination of Duong to the production, inspection, cross-examination on, and introduction of Gartman's report. *See Johnson*, 846 S.W.2d at 376. Likewise, appellant was not entitled to cross examine Gartman about Duong's report since she did not testify she reviewed it to refresh her memory. *Id*. Appellant's right to cross-examination was, thus, not impinged. *Cf*. *Powell*, 5 S.W.3d at 381 (trial court error in refusing to compel disclosure of business records that *the witness testified to using in preparation for trial* had constitutional implications because it effectively excluded evidence which could be used in cross-examination) (Emphasis added). Appellant's third issue is overruled.

By his fourth issue, appellant complains the trial court erred in allowing the chemist "to testify to the quantification of the drug asserted by the State to meet the criteria set out in the indictment." We disagree. After asking the chemist about his education and

training, the State inquired, "[o]nce evidence is received in your lab, can you tell us how it's handled"? Appellant's attorney immediately objected on the basis of "generality," which objection the court overruled. Thereafter, the attorney queried, "[c]an we have a hearing on 702 through 5 outside"? The court responded, "No. It's standard procedure that was applied in this case that's applied in the cases."

When the State questioned the chemist about the results of his analysis, the following exchange occurred:

| | |
|---|---|
| State: | Did your test indicate that the contents of State's Exhibit 1A (substance submitted by Duong) contained dihydrocodeine? |
| Chemist: | Yes, ma'am. |
| State: | And did your tests indicate that the contents of State's Exhibit 1A was a material, compound, mixture or preparation that contained limited quantities of not more than 300 milligrams? |
| Defense: | Objection, Judge, leading the witness. |
| Court: | Overruled. He's an expert. I'm going to allow her to ask that question. |

\* \* \*

| | |
|---|---|
| State: | Let's talk now about the contents of State's Exhibit No. 2B (substance submitted by Gartman) which has the unique lab number 114 -655. Did you perform the same analysis on the contents of State's Exhibit No. 2B? |
| Chemist: | Yes, I did. |

15

| State: | And what were the results of that anaylsis? |
|---|---|
| Chemist: | It is positive for dihydrocodeine. |
| State: | Again, does that mean that the contents of State's Exhibit 2B is a material, compound, mixture, or preparation containing limited quantities -- |
| Defense: | Object to the, again, leading of the witness, Judge. |
| Court: | Overruled. |
| State: | Of not more than 300 milligrams of dihydrocodeine per 100 milliliters per dosage unit with one or more nonnarcotic units in recognized therapeutic amounts? |
| Chemist: | Yes. |

To preserve error for appellate review, a party must make a timely, specific objection; the objection must be made at the earliest possible opportunity; the complaining party must obtain an adverse ruling from the trial court; and the issue on appeal must correspond to the objection made at trial. *See* Tex. R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 265 (Tex.Cr.App. 1998). An objection is sufficient to preserve error for appellate review if it communicates to the trial court what the objecting party wants, why the objecting party thinks himself entitled to relief, and does so in a manner clear enough for the court to understand the objection at a time when it is in the best position to do something about it. Lankston v. State, 827 S.W.2d 907, 909 (Tex.Cr.App. 1992). But when it appears from the context that a party failed to fairly and effectively communicate to the trial court the objection, its basis, or the relief sought, the appellant's complaint has not been preserved. *Id*.

16

Defense counsel did not challenge the chemist's qualifications to render an opinion on the weight or concentration of the controlled substance he tested. At best, the trial court could have inferred that the chemist's qualifications as an expert was the basis for the objection, even though there is nothing in the record to indicate that such an inference was made. When she did object, defense counsel argued the State's questioning of the chemist was "leading"–an objection entirely different from the one advanced on appeal. Consequently, because defense counsel failed to clearly notify the trial court of what appellant wanted and why he was entitled to it, his right to complain on appeal is waived. Tex. R. App. P. 33.1; Simmons v. State, 100 S.W.3d 484, 493 (Tex.App.–Texarkana 2003, no pet.).

By his fifth and final issue, appellant claims the evidence is legally insufficient to sustain his conviction. We disagree. In reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements of the offense. *See* Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-792, 61 L.Ed.2d 560, 576-77 (1979); *see also* Santellan v. State, 939 S.W.2d 155, 160 (Tex.Cr.App. 1997). The prosecution need not exclude every other reasonable hypothesis except the guilt of the accused. Sonnier v. State, 913 S.W.2d 511, 516 (Tex.Cr.App. 1995).[7]

---

[7]Citing Moore v. State, 640 S.W.2d 300 (Tex.Cr.App. 1988), appellant suggests the State still bears the burden of excluding every other reasonable hypothesis except that of the guilt of the defendant. We note, however, the "reasonable hypothesis analytical construct" was overruled over a decade ago. *See* Geesa v. State, 820 S.W.2d 154

17

A person commits the offense of delivery of a controlled substance if he: (1) intentionally or knowingly; (2) delivers; (3) a controlled substance listed in Penalty Group 3 or 4. *See* Tex. Health & Safety Code Ann. § 481.114(a); *cf*. Avila v. State, 15 S.W.3d 568, 573 (Tex.App.–Houston [14th Dist.] 2000, no pet.) (defining the elements of the offense of delivery of a controlled substance listed in Penalty Group 1). Dihydrocodeine is a Penalty Group 3 substance consisting of not more than 300 milligrams of dihydrocodeine, or any of its salts, per 100 milliliters or not more than 15 milligrams per dosage unit, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts. Tex. Health & Safety Code Ann. § 481.104(a)(4). Delivery of 28 grams or more but less than 200 grams of dihydrocodeine as described above is a second degree felony. Tex. Health & Safety Code Ann. § 481.114(c).

Delivery of a controlled substance may be accomplished in one of three ways: by actual transfer, by constructive transfer, or an offer to sell. *See* Tex. Health & Safety Code Ann. § 481.002(8); Jackson v. State, 84 S.W.2d 742, 744 (Tex.App.–Houston [1st Dist.] 2002, no pet.). The State abandoned the offer to sell paragraphs of the indictments in this case and pursued only the actual and constructive delivery paragraphs. Each jury charge incorporated the law of parties, thus authorizing the jury to find appellant guilty of delivery of a controlled substance if he, acting with intent to promote or assist the commission of

(Tex.Cr.App. 1991), *overruled in part* by Paulson v. State, 28 S.W.3d 570 (Tex.Cr.App. 2000).

the offense, solicited, encouraged, directed, aided or attempted to aid Bailey to commit the offense. *See* Tex. Pen. Code Ann. § 7.02(a)(2).

The record reveals that on October 26, 1999, undercover officers Duong and Gartman inquired of Bailey, an individual from whom they had purchased marihuana on previous occasions, whether he knew where they could purchase "liquid." Duong and Gartman testified "liquid" was the street name for dihydrocodeine. In response to their inquiries, Bailey introduced the officers to an individual named Bean Papa, who had gold teeth. Duong accompanied Bean Papa into Bailey's house where Bean Papa first asked him how much he wanted to purchase and then provided him with liquid codeine in exchange for $50. After Duong advised Gartman of his purchase, Gartman went inside the house where she found Bailey and Bean Papa. Gartman averred that Bailey retrieved a jar of liquid from appellant, then handed it to her and told her it cost $60. When Gartman asked Bailey why her jar was less full but cost more than her partner's, Bean Papa responded that Gartman's "was stronger." At trial, the officers identified appellant as Bean Papa, the individual with the gold teeth from whom they purchased codeine. Finally, the chemist who tested the substances testified that each was "a mixture, compound, material, or preparation that contain[ed] limited quantities of not more than 300 milligrams of dihydrocodeinone per 100 milliliters per dosage unit with one or more narcotic units in recognized therapeutic amounts." According to the chemist, one of the controlled substances weighed 58.18 grams, including adulterants and dilutants, while the other

weighed 107.14 grams.  Based upon the preceding evidence, we conclude a rational trier of fact could have found the essential elements of the crime of delivery of a controlled substance beyond a reasonable doubt.  The evidence is, therefore, legally sufficient.  Appellant's fifth issue is overruled.

Accordingly, the judgment, as reformed, is affirmed.


Don H. Reavis
Justice


Do not publish.